INDIANA INSURANCE COMPANY, Plaintiff-Appellee, v. HYDRA CORPORATION, Defendant-Appellant.

Second District   No. 2—92—1197

Opinion filed June 11, 1993.

Thomas A. Morris, Jr., of Brydges, Riseborough, Morris, Franke & Miller, of Chicago, and Brydges, Riseborough, Morris, Franke & Miller, of Waukegan (Janine H. Moffatt, of counsel), for appellant.

Condon & Cook, of Chicago (Paul S. Festenstein, of counsel), for appellee.

JUSTICE QUETSCH delivered the opinion of the court:

Defendant, Hydra Corporation (Hydra), appeals from a judgment on the pleadings entered against it in favor of plaintiff, Indiana Insurance Company (Indiana). The trial court held that Hydra's alleged breach of contract with a third party, B.K. Production Specialties (B.K.), did not constitute an "occurrence" under either of the insurance policies issued to Hydra by Indiana. Therefore, Indiana had no duty to defend or indemnify Hydra for property damage arising out of that alleged breach of contract.

Hydra contends on appeal that: (1) the facts and circumstances giving rise to the litigation filed by B.K. against Hydra constitute an occurrence under the policies of insurance issued by Indiana; (2) Indiana is estopped from raising any coverage issues, exclusions or defenses; and (3) the trial court should have allowed Hydra leave to file an amended counterclaim prior to the granting of judgment on the pleadings. We affirm the trial court.

The facts of this case, as alleged in B.K.'s first amended complaint and the arbitrator's award attached as an exhibit thereto, are as follows. On May 1, 1987, Hydra contracted to build an industrial building for B.K. That contract provided for arbitration in the event

of a dispute between the parties relating to the contract document or the breach thereof. B.K. subsequently filed a notice of demand for arbitration, claiming that numerous cracks had appeared on the surface of the concrete flooring. Further, the exterior of the building had developed an unsightly appearance due to loose paint. The arbitrator ordered Hydra to make repairs and to pay B.K. $3,000 for loss of production profits.

Hydra did not make the repairs, and B.K. filed a complaint seeking enforcement of the arbitration award or, alternatively, damages. B.K. also sought additional damages for Hydra's allegedly willful failure to comply with the arbitration award, which exacerbated the construction defects and diminished the value of B.K.'s property. Hydra tendered B.K.'s first amended complaint to Indiana for the purposes of defense and indemnity. The coverage clauses of the policies issued by Indiana to Hydra, and attached as an exhibit to Indiana's complaint for declaratory judgment, provide, in relevant part:

> "The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
>
> Coverage A. bodily injury or
>
> Coverage B. property damage
>
> to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage ***."

Indiana brought a complaint for declaratory judgment, asking the court to find that it need not defend or indemnify Hydra in this matter because the damages suffered by B.K. were not caused by an occurrence. Hydra counterclaimed for declaratory judgment in its favor. The trial court granted Indiana's motion for judgment on the pleadings. Hydra appeals.

Hydra argues that the trial court's granting of Indiana's motion for judgment on the pleadings is contrary to the law and that Indiana had a duty to indemnify and defend Hydra. A judgment on the pleadings is proper if only questions of law and not of fact exist after the pleadings have been filed. (*Teeple v. Hunziker* (1983), 118 Ill. App. 3d 492, 496.) On review of an order granting judgment on the pleadings, the appellate court must ascertain whether the trial court correctly decided that the pleadings presented no genuine issue of material fact and, if there was no such issue, whether judgment was correctly entered. *Teeple*, 118 Ill. App. 3d at 497.

■ When determining whether an insurance company must defend its insured in a suit filed against it, the court must look to the factual allegations of the underlying complaint and the provisions of the insurance policy. An insurance company has a duty to defend only if the complaint alleges facts within or potentially within the coverage of the policy (*Thornton v. Paul* (1978), 74 Ill. 2d 132, 144), unless the insurance company has knowledge of unpleaded facts which, when taken together with the complaint's allegations, indicate that the claim is within or potentially within the policy coverage. (*Aetna Casualty & Surety Co. v. Freyer* (1980), 89 Ill. App. 3d 617, 621.) The policy should be liberally construed with any uncertainty resolved in favor of the insured. *Travelers Insurance Cos. v. P.C. Quote, Inc.* (1991), 211 Ill. App. 3d 719, 724.

The factual allegations underlying B.K.'s first amended complaint against Hydra are the same as those underlying its initial demand for repairs and its notice of demand for arbitration. B.K. claims that after Hydra constructed the building paint did not adhere to the exterior of the building and numerous cracks appeared in the concrete floor. Thus, Hydra breached its contractual obligation to furnish work, labor and materials of good and workmanlike quality. There is no evidence of any unpleaded facts which reveal B.K.'s damages to be other than from Hydra's alleged breach of contract.

■ The general coverage provision in the policies issued by Indiana to Hydra states that Indiana must indemnify Hydra for damages which Hydra becomes legally obligated to pay as the result of bodily injury or property damages. Indiana must also defend any suit against Hydra seeking damages on account of such bodily injury or property damage. This provision does not provide coverage for damages resulting from breach of contractual obligations, as is the basis for B.K.'s complaint against Hydra. *Aetna Casualty & Surety Co. v. Spancrete of Illinois, Inc.* (N.D. Ill. 1989), 726 F. Supp. 204, 206.

Furthermore, the underlying complaint does not allege damages resulting from an "occurrence" as required by the policies. The use of the word "occurrence" in insurance policies broadens coverage and eliminates the need to find an exact cause of damages as long as they are neither intended nor expected by the insured. (*Bituminous Casualty Corp. v. Gust K. Newburg Construction Co.* (1991), 218 Ill. App. 3d 956, 965.) However, the occurrence must still be accidental. (*Bituminous*, 218 Ill. App. 3d at 965.) An accident is "an unforeseen occurrence, usually of an untoward or disastrous character or an undesigned sudden or unexpected event of an inflictive or unfortunate character." (*Aetna Casualty & Surety Co. v. Freyer* (1980), 89 Ill.

App. 3d 617, 619.) The natural and ordinary consequences of an act do not constitute an accident. *Bituminous*, 218 Ill. App. 3d at 966.

B.K.'s damages were not the result of an accident. This case is like *Bituminous Casualty Corp. v. Gust K. Newburg Construction Co.* (1991), 218 Ill. App. 3d 956. There, the State of Illinois contracted with Newburg Construction to provide it with a heating, ventilation and air conditioning (HVAC) system. The State alleged that the HVAC system that was installed in the building was not what it bargained for or expected. Newburg Construction sought defense and indemnity from its insurance company, Bituminous Casualty. Bituminous Casualty denied coverage. The court stated that "the allegations of too hot and too cold temperatures in the building are no more than the natural and ordinary consequences of installing an inadequate HVAC system." (*Bituminous*, 218 Ill. App. 3d at 966.) The court therefore concluded that the State's complaint did not allege a loss of use of tangible property caused by an occurrence. (*Bituminous*, 218 Ill. App. 3d at 966.) Similarly, in the present case, the cracks in the floor and the loose paint on the exterior of the building are the natural and ordinary consequences of installing defective concrete flooring and applying the wrong type of paint.

Contrary to Hydra's argument, we find that this case is not like *Trovillion v. United States Fidelity & Guaranty Co.* (1985), 130 Ill. App. 3d 694, and *Harbor Insurance Co. v. Tishman Construction Co.* (1991), 218 Ill. App. 3d 936. In *Trovillion*, the plaintiffs built a house as general contractors for James and Melissa Williamson. The Williamsons sued the plaintiffs for breach of contract because of their failure to erect the house in a good and workmanlike manner. The Williamsons' complaint alleged that the floor sagged because of inadequate support and that the floor in the bedroom area buckled and became detached from the walls. The walls and the vinyl kitchen floor cracked. The complaint also alleged that the roof leaked and that the mortar and bricks in the exterior walls and the concrete footings cracked because of structural defects. *Trovillion*, 130 Ill. App. 3d at 697.

The plaintiffs' insurance company initially undertook their defense under a reservation of rights but later withdrew its defense, citing certain policy exclusions. Those exclusions state that the insurance does not apply:

"(n) To property damage to the Named Insured's products arising out of such products or any part of such products;

(o) to property damage to work performed by or on behalf of the Named Insured arising out of the work or any portion

thereof, or out of materials, parts or equipment furnished in connection therewith \*\*\*." *Trovillion*, 130 Ill. App. 3d at 697.

The court stated that the insurer must have been uncertain as to its potential liability, as it initially undertook the defense of the Williamsons' claim. (*Trovillion*, 130 Ill. App. 3d at 699.) The court concluded that the applicability of the exclusionary clauses was not clear and free from doubt and that the Williamsons' claim was potentially covered under the policy. *Trovillion*, 130 Ill. App. 3d at 699.

In *Harbor Insurance Co.*, La Salle National Bank alleged that the contractors and subcontractors who performed construction work on the Apparel Mart and parking garage had breached their contractual duties and were liable for alleged design and construction defects and faulty workmanship. The defects alleged by La Salle included the "mislocation of a structural beam and its bearing pad, structural failure of the northwest corner of the parking garage, severe cracking and distress in the masonry wall and brick facade, inadequate expansion joints and bearings in the brick facade, defective roof flashings, defective installation and securing of insulation and firesafing, delamination and spalling of the topping slab throughout the parking garage, and inadequate and improper design and construction of the parking garage surface." *Harbor Insurance Co.*, 218 Ill. App. 3d at 938.

The contractors and subcontractors tendered the defense of the lawsuit to Harbor Insurance Company (Harbor). Harbor relied on two policy exclusions as a basis for denying coverage. Those exclusions state that the insurance does not apply:

"(y) to property damage \*\*\* (2) \*\*\* to \*\*\* (d) that particular part of any property, not on premises owned by or rented to the insured \*\*\*. \*\*\*

(iii) the restoration, repair or replacement of which has been made or is necessary by reasons of faulty workmanship thereon by or on behalf of the insured \*\*\*;

(z) \*\*\* to property damage to work performed by the named insured arising out of the work or any portion thereof, or out of the materials, parts or equipment furnished in connection herewith." *Harbor Insurance Co.*, 218 Ill. App. 3d at 939.

Harbor filed a declaratory judgment action seeking a ruling that it was not obligated to defend or indemnify those entities claiming to be insureds under the Harbor comprehensive general liability policies. The trial court granted Harbor's motion for summary judgment in the declaratory judgment action. The appellate court reversed. The court found that no Illinois courts had construed the exclusions relied upon

by Harbor and that the underlying complaint alleged facts potentially within the policy coverage. *Harbor Insurance Co.*, 218 Ill. App. 3d at 942.

The underlying complaint in both *Trovillion* and *Harbor Insurance Co.* alleged breach of contract by a contractor or contractors. In each case the reviewing court determined that the third party's damages were potentially covered by the policy. However, *Trovillion* and *Harbor Insurance Co.* are distinguishable from this case because they involved the interpretation of various policy exclusions that are not at issue here. Further, neither case addressed the argument that the third party's damages were not caused by an occurrence.

The pleadings in this case presented no questions of material fact, and Indiana was entitled to judgment in its favor. We hold that the trial court did not err in granting Indiana's motion for judgment on the pleadings. Since we have determined that B.K.'s claim for breach of contract was not covered under the policies issued by Indiana, we need not rule upon Indiana's other policy defenses.

■ We next address Hydra's argument that Indiana was estopped from raising coverage issues, exclusions or defenses because it wrongfully failed to defend Hydra in the initial arbitration proceedings. An insurer's wrongful failure to defend estops that insurer from later raising policy defenses or noncoverage in a subsequent action by the insured. (*Thornton v. Paul*, 74 Ill. 2d at 145.) However, Indiana was not required to defend Hydra in the initial arbitration proceedings because B.K.'s action against Hydra clearly did not allege a claim potentially within the policy coverage. (*United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.* (1991), 144 Ill. 2d 64, 73.) Since Indiana did not wrongfully fail to defend Hydra in the arbitration proceedings, it was not estopped from raising noncoverage in a subsequent action.

■ Lastly, Hydra contends that the trial court erred in denying its motion for leave to file an amended counterclaim prior to the court's granting of judgment on the pleadings in favor of Indiana. The decision whether to allow an amendment under section 2—616 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—616) rests within the sound discretion of the trial court, and its decision will not be disturbed absent a showing of an abuse of that discretion. (*Schwaner v. Belvidere Medical Building Partnership* (1987), 155 Ill. App. 3d 976, 988.) One of the factors to be considered in deciding whether that discretion was properly exercised is whether the proposed amendment would cure the defective pleading. *Schwaner*, 155 Ill. App. 3d at 988.

Hydra's original counterclaim for declaratory judgment alleged that B.K.'s action against it was covered under the insurance policies issued by Indiana. The trial court determined that B.K.'s action for breach of contract was not an "occurrence" and that Indiana had no duty to indemnify or defend Hydra for property damage arising out of that alleged breach of contract. Hydra's amended counterclaim for declaratory judgment did not assert any new facts that would have required Indiana to defend or indemnify Hydra. The trial court did not abuse its discretion in denying Hydra's motion for leave to file its amended counterclaim.

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

GEIGER and DOYLE, JJ., concur.