MONTICELLO INSURANCE COMPANY, Plaintiff-Appellee, v. WIL-FREDS CONSTRUCTION, INC., f/k/a Wil-Freds, Inc., Defendant-Appellant (Fujikawa Johnson and Associates, Inc., *et al.*, Defendants).

Second District   No. 2—95—0466

Opinion filed February 1, 1996.

Paul T. Lively and Michael Resis, both of Querrey & Harrow, Ltd., of Chicago, for appellant.

James K. Horstman, of Williams & Montgomery, Ltd., of Chicago, for appellee.

JUSTICE BOWMAN delivered the opinion of the court:

Defendant, Wil-Freds Construction, Inc. (Wil-Freds), appeals a summary judgment entered in favor of plaintiff, Monticello Insurance Company (Monticello), in a declaratory judgment action to determine whether Monticello is required to defend or indemnify Wil-Freds under a comprehensive general liability insurance policy. We affirm.

## I. Background

The following summary of the facts and procedural history are

taken from the record on appeal. On April 27, 1989, the City of Naperville (Naperville) and Wil-Freds entered into an agreement for the construction of a three-story municipal building and an adjoining 400-car parking garage (the project). The contract between Wil-Freds and Naperville provided, *inter alia,* that Wil-Freds was solely responsible for all construction methods, techniques, and procedures; that Wil-Freds was responsible for the acts and omissions of subcontractors; that Wil-Freds warranted the work to be of good quality, free from defects, and in conformance with the contract documents; and that Wil-Freds would furnish a performance bond in an amount equal to the contract sum.

On October 1, 1992, following the construction of the project, Naperville filed a two-count complaint against Wil-Freds and the project's architect, Fujikawa Johnson & Associates, Inc. (Fujikawa). Count II of the complaint, which pertained to Wil-Freds, was entitled "Breach of Contract Against Wil-Freds Construction, Inc." It alleged a multitude of construction defects, including:

> "abnormal voids and cracks in the concrete walls and columns in the parking garage; honeycombed concrete; incompletely consolidated concrete; abnormal cracking at the Southwest stairwell; exposure of rebar at column G6; insufficient support for anchor bolts at column G6; leaking in the parking garage below the decorative fountain; water damage to the lobby of the office building and basement underneath the lobby; interior water damage caused by water penetration of the roof; an unbalanced, defective HVAC system; defective, unsightly granite; cracked terrazzo floors and stairwells; defective doors; and numerous miscellaneous construction defects."

Wil-Freds tendered the defense of Naperville's action to Monticello, which insured Wil-Freds under a comprehensive general liability (CGL) policy. In response, on August 9, 1993, Monticello filed a complaint for declaratory judgment against Wil-Freds, Naperville, and Fujikawa, seeking a determination of its obligation to defend or indemnify Wil-Freds in connection with Naperville's action.

The policy at issue is a standard CGL policy and provides:

> "The company [Monticello] will pay on behalf of the **insured** [Wil-Freds] all sums which the **insured** shall become legally obligated to pay as damages because of
> A. **bodily injury** or
> B. **property damage**
> to which this insurance applies, caused by an **occurrence**[.]"

The policy defines "occurrence" as: "an accident, including continuous or repeated exposure to conditions, which results in **bodily injury** or **property damage** neither expected nor intended from the standpoint of the insured."

The policy also contains a number of exclusions, including the following:

"This insurance does not apply:

(n) to **property damage** to the **named insured's products** arising out of such products or any part of such products;

(o) to **property damage** to work performed by or on behalf of the **named insured** arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith[.]"

The policy defines "named insured's products" as:

"goods or products manufactured, sold, handled or distributed by the **named insured** or by others trading under his name, including any container thereof (other than a vehicle), but 'named insured's products' shall not include a vending machine or any property other than such container, rented to or located for use of others but not sold[.]"

Additionally, the CGL policy was modified by a broad form property damage endorsement (BFPD endorsement). The BFPD endorsement replaced exclusions (o) and (k) (not relevant to the present case) of the CGL policy with different exclusionary language, but did not replace or alter exclusion (n).

Monticello and Wil-Freds filed cross-motions for summary judgment in the declaratory judgment action. In support of its motion for summary judgment, Monticello relied upon the CGL policy's definition of "occurrence," arguing that, because Naperville sought to recover for property damage to the project itself resulting from a breach of contract, there was no occurrence as the term is defined in the CGL policy. Monticello also relied upon numerous policy exclusions, including exclusion (n). In its summary judgment motion, Wil-Freds argued that Naperville's complaint did allege an "occurrence" because true but unpleaded facts showed that the allegedly defective construction had caused damage to property other than the project itself. Wil-Freds also argued that, based upon the BFPD endorsement, coverage existed for defects which resulted from the work of subcontractors rather than from the work of Wil-Freds itself.

Wil-Freds supported its summary judgment motion with the affidavit of William Guinea, Wil-Freds' project manager for the Naperville project. Guinea stated that many of the construction defects alleged in Naperville's complaint were attributable to the work of subcontractors engaged by Wil-Freds rather than to Wil-Freds' own work. Also attached to Wil-Freds' motion was the affidavit of Wil-Freds' president, William Luxion. Luxion stated that many of the alleged defects involved items which Wil-Freds did not supply or install.

Luxion estimated the total cost of repairs needed to correct the defects at $1,538,824.

Finally, Wil-Freds attached to its summary judgment motion excerpts from the deposition of Jonathan Craig Blomquist, Naperville's assistant city manager, taken in the underlying action. In his deposition, Blomquist stated that water leakage in the parking garage damaged several Naperville-owned fleet vehicles and one privately owned vehicle. Blomquist stated, however, that Naperville "choose[s] not to fix the vehicles until the problem is cured."

After full briefing and argument by the parties, the trial court granted Monticello's motion, denied Wil-Freds' motion, and entered summary judgment for Monticello. Wil-Freds then filed this timely appeal.

## II. Discussion

Wil-Freds contends on appeal that the trial court erred in denying its motion for summary judgment and in entering summary judgment for Monticello. In support of this contention, Wil-Freds argues (1) Naperville's complaint alleges an "occurrence," triggering coverage under the CGL policy; (2) exclusion (n) does not bar coverage; and (3) the BFPD endorsement provides coverage for construction defects attributable to the work of subcontractors.

It appears from the record that the trial court's entry of summary judgment for Monticello was based solely upon exclusion (n) of the CGL policy. However, because we may affirm a summary judgment on any basis found in the record, we consider all provisions of the CGL policy to determine if summary judgment for Monticello was appropriate. (See *Bank of Hillside v. Laurel Motors, Inc.* (1994), 259 Ill. App. 3d 362, 364-65.) We review the trial court's entry of summary judgment *de novo. Outboard Marine Corp. v. Liberty Mutual Insurance Co.* (1992), 154 Ill. 2d 90, 102.

### A. Duty-To-Defend Standard

■ To determine an insurer's duty to defend its insured, the court must look to the allegations of the underlying complaint and compare those allegations to the relevant coverage provisions of the insurance policy. (*Crum & Forster Managers Corp. v. Resolution Trust Corp.* (1993), 156 Ill. 2d 384, 393; *Economy Preferred Insurance Co. v. Grandadam* (1995), 275 Ill. App. 3d 866, 869.) Additionally, we may consider "true but unpleaded facts, which, when taken together with the complaint's allegations, indicate that the claim is within or potentially within the policy's coverage." (*Associated Indemnity Co. v. Insurance Co. of North America* (1979), 68 Ill. App. 3d 807, 816.) If the underlying complaint alleges facts within or potentially within

the policy's coverage provisions, the insurer has a duty to defend even if the allegations are groundless, false, or fraudulent. *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.* (1991), 144 Ill. 2d 64, 73 (USF&G); see also *National Union Fire Insurance Co. v. Glenview Park District* (1994), 158 Ill. 2d 116, 124.

■ An insurer may not refuse to defend an action against its insured unless it is clear from the face of the underlying complaint that the allegations fail to state facts which bring the case potentially within the policy's coverage. (*Dixon Distributing Co. v. Hanover Insurance Co.* (1994), 161 Ill. 2d 433, 438-39; *Conway v. Country Casualty Insurance Co.* (1982), 92 Ill. 2d 388, 393.) If the underlying complaint alleges several theories of recovery against the insured, the insurer must defend the insured even if only one such theory is potentially within the coverage of the policy. *USF&G*, 144 Ill. 2d at 73; *Western Casualty & Surety Co. v. Adams County* (1989), 179 Ill. App. 3d 752, 756.

The underlying complaint and the insurance policy should be liberally construed in favor of the insured. (*USF&G*, 144 Ill. 2d at 74.) Policy language must be interpreted in its " 'plain, ordinary and popular sense,' " and where a provision is clear and unambiguous, it will be applied as written. (*USF&G*, 144 Ill. 2d at 74, quoting *Hartford Accident & Indemnity Co. v. Case Foundation Co.* (1973), 10 Ill. App. 3d 115, 121.) A provision will, however, be found to be ambiguous if it is subject to more than one reasonable interpretation. (*USF&G*, 144 Ill. 2d at 74.) If an insurance clause is ambiguous, it must be construed in favor of the insured. *USF&G*, 144 Ill. 2d at 74.

■ In the present case, the allegations of Naperville's complaint, together with the Guinea and Luxion affidavits and Blomquist's deposition testimony, indicate that the CGL policy does not provide coverage for Naperville's claim. Accordingly, we hold that the trial court did not err in entering summary judgment for Monticello. We base this holding upon two conclusions: (1) the construction defects alleged in Naperville's complaint do not constitute an "occurrence" within the meaning of the CGL policy; and (2) even if the construction defects do constitute an "occurrence," coverage is barred by exclusion (n) of the CGL.

## B. Occurrence

The CGL policy defines an occurrence as "an accident, including continuous or repeated exposure to conditions, which results in **bodily injury** or **property damage** neither expected nor intended from the standpoint of the insured." Thus, to determine whether Naperville's complaint alleges an occurrence, we must conduct three

distinct inquiries. First, we ask whether the complaint alleges an accident; only if we answer this question in the affirmative do we ask whether this accident has resulted in property damage; and, if so, whether this property damage was expected or intended by Wil-Freds.

We now turn to the first inquiry, whether Naperville's complaint alleges an accident. When construing CGL policies, courts define an accident as "an unforeseen occurrence, usually of an untoward or disastrous character or an undesigned sudden or unexpected event of an inflictive or unfortunate character." (*Aetna Casualty & Surety Co. v. Freyer* (1980), 89 Ill. App. 3d 617, 619; see also *Travelers Insurance Cos. v. P.C. Quote, Inc.* (1991), 211 Ill. App. 3d 719, 726 (stating similar definition of accident).) The natural and ordinary consequences of an act do not constitute an accident. *Travelers*, 211 Ill. App. 3d at 726.

Recently, in a case strikingly similar to the present one, this court held that property damage to a building caused by a contractor's defective construction of the building is not an accident and does not, therefore, constitute an occurrence. (See *Indiana Insurance Co. v. Hydra Corp.* (1993), 245 Ill. App. 3d 926.) There, the insured contractor, Hydra, agreed to construct a building for B.K. Production Specialties (B.K.). Following the construction of the building, B.K. sued Hydra for breach of contract, claiming that Hydra breached its contractual obligation to furnish work and materials of good and workmanlike quality. Specifically, B.K.'s complaint alleged that numerous cracks had appeared in the building's concrete flooring and that the exterior of the building had developed an unsightly appearance due to loose paint. *Hydra*, 245 Ill. App. 3d at 927-28.

Hydra tendered the defense of the B.K. action to its CGL insurer, Indiana. Indiana then brought a declaratory judgment action seeking a declaration that it had no duty to defend or indemnify Hydra in the B.K. action. The trial court entered a judgment on the pleadings for Indiana, and Hydra appealed. *Hydra*, 245 Ill. App. 3d at 928.

The appellate court initially noted that B.K.'s claim against Hydra was for breach of contract and sought damages only for the results of Hydra's unworkmanlike construction. The court stated that there was "no evidence of any unpleaded facts which reveal B.K.'s damages to be other than from Hydra's alleged breach of contract." (*Hydra*, 245 Ill. App. 3d at 929.) The court then proceeded to hold that B.K.'s complaint did not allege damages resulting from an occurrence as required by the CGL policy. Noting that an occurrence must be accidental and that the natural and ordinary consequences of an act do not constitute an accident, the court explained

that "the cracks in the floor and the loose paint on the exterior of the building are the natural and ordinary consequences of installing defective concrete flooring and applying the wrong type of paint." (*Hydra*, 245 Ill. App. 3d at 930.) Because B.K.'s complaint failed to allege an occurrence, the *Hydra* court affirmed the judgment on the pleadings. 245 Ill. App. 3d at 932.

*Hydra* is directly applicable to the present case. Here, as in *Hydra*, the policy at issue is a standard CGL policy. The underlying action in the present case is, like the underlying action in *Hydra*, a breach of contract claim alleging the defective construction of a building which resulted in damage to the building itself. Finally, as in *Hydra*, the underlying complaint here does not include a claim for damage to property other than the building itself. The factual similarity between *Hydra* and the present case compels us to follow *Hydra* and hold that the construction defects set forth in Naperville's complaint are the natural and ordinary consequences of the improper construction techniques of Wil-Freds and its subcontractors and, thus, do not constitute an occurrence within the definition in the CGL policy.

*Hydra*'s conclusion that the natural results of the negligent and unworkmanlike construction of a building do not constitute an occurrence is consistent with case law from other jurisdictions. See, *e.g.*, *J.Z.G. Resources, Inc. v. King* (2d Cir. 1993), 987 F.2d 98, 103 (defective workmanship of excavation contractor is not an occurrence); *Jakobson Shipyard, Inc. v. Aetna Casualty & Surety Co.* (2d Cir. 1992), 961 F.2d 387, 389 (faulty workmanship which does not comply with contract specifications is not an occurrence triggering coverage under CGL policy; applying New York law); *Dreis & Krump Manufacturing Co. v. Phoenix Insurance Co.* (7th Cir. 1977), 548 F.2d 681, 688-89 (property damage to industrial equipment resulting from defective manufacture is not an occurrence); *Hamilton Die Cast, Inc. v. United States Fidelity & Guaranty Co.* (7th Cir. 1975), 508 F.2d 417, 419-20 (defective manufacture of tennis racket frame is not an occurrence; applying Ohio law); *Reliance Insurance Co. v. Mogavero* (D. Md. 1986), 640 F. Supp. 84, 86-87 (occurrence "does not include the normal, expected consequences of poor workmanship"); *United States Fidelity & Guaranty Corp. v. Advance Roofing & Supply Co.* (1989), 163 Ariz. App. 476, 482, 788 P.2d 1227, 1233 (mere faulty workmanship is not an occurrence under CGL policy); *Rivnor Properties v. Herbert O'Donnell, Inc.* (La. App. 1994), 633 So. 2d 735, 751 (no occurrence where contractor's liability is based upon improper construction or defective workmanship); *Hawkeye-Security Insurance Co. v. Vector Construction Co.* (1990), 185 Mich. App. 369, 377, 460 N.W.2d 329, 334

(defective workmanship is not an occurrence under CGL policy); *McAllister v. Peerless Insurance Co.* (1984), 124 N.H. 676, 679-80, 474 A.2d 1033, 1035-37 (defective workmanship is not an occurrence).

*Hamilton Die Cast* is particularly instructive. There, the plaintiff manufactured aluminum tennis racket frames for Midland Sporting Goods (Midland). Midland sued the plaintiff, claiming that the frames were defective and not in conformance with the contract between the plaintiff and Midland. The plaintiff tendered the defense of the Midland action to the defendant, which insured the plaintiff under a CGL policy. The defendant refused the tender, asserting, *inter alia*, that there was no occurrence as required by the policy to trigger coverage. After the district court entered summary judgment for the defendant, the plaintiff appealed. *Hamilton Die Cast*, 508 F.2d at 418-19.

The court of appeals affirmed. The court first noted that the CGL policy at issue defined an occurrence as " 'an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the Insured.' " (*Hamilton Die Cast*, 508 F.2d at 420.) The court held that there was no occurrence because the alleged negligent manufacture of the tennis racket frames was not an accident. The court explained:

> "If one of the completed rackets had broken during normal use due to the defective frames and a person or an item of property had been harmed, it seems clear that there would have been an 'occurrence' and that defendant would have had responsibility for plaintiff's defense. Such a situation would clearly be 'an accident.' The policy does not, however, cover 'an occurrence of alleged negligent manufacture'; it covers negligent manufacture that results in 'an occurrence.' " *Hamilton Die Cast*, 508 F.2d at 420.

See also *Weedo v. Stone-E-Brick, Inc.* (1979), 81 N.J. 233, 239-40, 405 A.2d 788, 796 (CGL policy "does not cover an accident of faulty workmanship but rather faulty workmanship which causes an accident").

This reasoning is applicable to the present case. If, for example, Naperville had sued Wil-Freds for the water damage suffered by cars in the parking garage, or a pedestrian sued Wil-Freds for an injury caused by falling concrete, there can be little doubt that Monticello would be required to defend Wil-Freds under the CGL policy, because there would have been "negligent manufacture that results in 'an occurrence.' " (*Hamilton Die Cast*, 508 F.2d at 420.) On the other hand, where the only claim is one for a breach of contract alleging property damage to the project itself, we are faced merely with " 'an occur-

rence of alleged negligent manufacture' " (*Hamilton Die Cast*, 508 F.2d at 420), and no coverage exists. We therefore follow *Hydra*, *Hamilton Die Cast*, and the other authorities cited above and hold that the construction defects set forth in Naperville's complaint do not constitute an occurrence within the definition in the CGL policy. Because we hold that Naperville's complaint does not allege an occurrence, we need not address whether there has been property damage expected or intended from the standpoint of the insured.

## C. Exclusion (n)

Although we conclude above that there is no coverage in the instant case because Naperville's complaint does not allege an occurrence, exclusion (n) of the CGL provides a separate basis for affirming the trial court. Exclusion (n), a standard provision commonly referred to as the "own products exclusion," provides that the insurance does not apply "to **property damage** to the **named insured's products** arising out of such products or any part of such products." The policy defines "named insured's products" as:

> "goods or products manufactured, sold, handled or distributed by the **named insured** or by others trading under his name, including any container thereof (other than a vehicle), but 'named insured's products' shall not include a vending machine or any property other than such container, rented to or located for use of others but not sold."

In *Home Indemnity Co. v. Wil-Freds, Inc.* (1992), 235 Ill. App. 3d 971, this court applied exclusion (n) to bar coverage under circumstances virtually identical to those in the present case. In *Home Indemnity*, the Board of Library Directors of the Village of Lombard (Library Board) contracted with Wil-Freds for the construction of a new addition to a library located in Lombard (addition). After the completion of the addition, the Library Board filed a four-count complaint naming as defendants Wil-Freds and the architect who designed the addition. The counts of the complaint pertaining to Wil-Freds alleged a breach of contract based on a myriad of construction defects similar to those alleged by Naperville in the present case. *Home Indemnity*, 235 Ill. App. 3d at 974.

At some point after the Library Board filed its complaint, Home Indemnity filed a declaratory judgment action against Wil-Freds, seeking a determination of its obligation to defend or indemnify in the Library Board's action. Home Indemnity insured Wil-Freds under a standard CGL policy which was, in all relevant respects, identical to the CGL policy at issue in the present case. It contained identical coverage language, an identically worded exclusion (n), and was modified by the BFPD endorsement. The parties in the declaratory judg-

ment action filed cross-motions for summary judgment, and the trial court entered summary judgment for Home Indemnity. Wil-Freds appealed. *Home Indemnity*, 235 Ill. App. 3d at 972.

On appeal, this court held that exclusion (n), standing alone, precluded coverage for the claim asserted in the Library Board's complaint. Relying upon *Western Casualty & Surety Co. v. Brochu* (1984), 122 Ill. App. 3d 125, *aff'd* (1985), 105 Ill. 2d 486, *Home Indemnity* held that a completed building fell within the policy's definition of a product as " 'goods or products manufactured, sold, handled or distributed by the named insured.' " (*Home Indemnity*, 235 Ill. App. 3d at 976.) *Home Indemnity* characterized exclusion (n) as a business risk exclusion premised on the theory that "liability policies are not intended to provide protection against the insured's own faulty workmanship or product, which are normal risks associated with the conduct of the insured's business." (235 Ill. App. 3d at 976.) According to *Home Indemnity*, the rationale for this interpretation of exclusion (n) is that CGL insurance is not intended to take the place of a performance bond. 235 Ill. App. 3d at 976; see also *Faulkner v. United States Fidelity & Guaranty Co.* (1987), 157 Ill. App. 3d 590, 597; *Qualls v. Country Mutual Insurance Co.* (1984), 123 Ill. App. 3d 831, 834.

The parallels between *Home Indemnity* and the present case are self-evident. The CGL policies in the case at bar and in *Home Indemnity* are identical in all relevant respects. There, as here, a building owner sued Wil-Freds for breach of contract, alleging a multitude of construction defects attributable to both Wil-Freds and its subcontractors. In fact, the Library Board's complaint in *Home Indemnity* is a virtual carbon copy of Naperville's complaint in this case. The remarkable similarity between *Home Indemnity* and the present case requires us to apply the *Home Indemnity* holding here.

Wil-Freds attempts to distinguish *Home Indemnity* by arguing that, in that case, the only property damaged was Wil-Freds' "own product," *i.e.*, the library addition. Here, Wil-Freds asserts Blomquist's deposition demonstrates that property other than the project (the cars in the parking garage) was damaged. Wil-Freds argues that Blomquist's deposition testimony demonstrates the existence of "true but unpleaded facts" (*Associated Indemnity*, 68 Ill. App. 3d at 816), which render exclusion (n) inapplicable in this case. This argument is unpersuasive.

It is true that the *Home Indemnity* court pointed out that "there are no allegations of harm to other property or persons, only allegations arising from harm to the addition itself." (*Home Indemnity*, 235 Ill. App. 3d at 977.) However, the same is true in the present case.

Although Blomquist stated in his deposition that some cars in the parking garage were damaged by leaking water, the unmistakable implication of his testimony is that Naperville had chosen not to seek recovery from Wil-Freds for this damage. In the present case, therefore, as in *Home Indemnity*, the unpleaded facts indicate that the allegations of damage asserted against Wil-Freds concern only the project itself. Moreover, a review of Naperville's complaint reveals that it seeks recovery only for damage to the project itself, not for damage to the cars in the garage. Thus, there are no "*unpleaded facts within its knowledge, which it knows to be correct*, and which, when taken together with the complaint's allegations, indicate that *the claim asserted* \*\*\* is potentially within the coverage of the insurance policy." (Emphasis in original.) (*Associated Indemnity*, 68 Ill. App. 3d at 817.) Accordingly, we reject Wil-Freds' attempt to distinguish *Home Indemnity* from the case at bar.

Sensing the weakness of its attempt to distinguish *Home Indemnity* from the present case, Wil-Freds devotes much of its brief to urging that we overrule *Home Indemnity*. According to Wil-Freds, *Home Indemnity*'s holding that a building is the product of the general contractor for the purposes of exclusion (n) "goes against all logic and common sense" and is counter to the weight of authority in Illinois and elsewhere. We disagree.

First, contrary to Wil-Freds' argument, *Home Indemnity* is well grounded in Illinois law. The primary case relied upon by *Home Indemnity* is *Western Casualty & Surety Co. v. Brochu* (1984), 122 Ill. App. 3d 125, *aff'd* (1985), 105 Ill. 2d 486. There, Mark III Development (Mark III), a carpentry and contracting company, was insured by Western Casualty & Surety Company (Western) under a standard CGL policy. The CGL policy was identical in most respects to the policy in the present case and to the policy in *Home Indemnity*. It contained exclusions (n) and (o) but, apparently, did not contain the BFPD endorsement. *Brochu*, 122 Ill. App. 3d at 128-29.

Mark III agreed to construct a house for the Brochu family in a " 'good and workmanlike manner.' " (*Brochu*, 122 Ill. App. 3d at 127.) After the construction was complete, the Brochus sued Mark III for breach of contract, claiming that it had failed to construct the house in a workmanlike fashion. Western filed a declaratory judgment action seeking a declaration that the CGL policy did not provide coverage for the Brochus' action. After the trial court found that coverage existed and entered summary judgment accordingly, Western appealed. *Brochu*, 122 Ill. App. 3d at 126-28.

This court reversed, holding that exclusions (n) and (o) each operated to bar coverage. With respect to exclusion (n), the *Brochu* court

stated that the completed house could be construed to fall within the CGL policy's definition of a product (" 'goods or products manufactured, sold, handled or distributed by the named insured ***' "). (122 Ill. App. 3d at 129.) The *Brochu* court held that exclusion (n) precludes coverage for repairs to the insured's product arising from the product's defective construction. (122 Ill. App. 3d at 131.) *Brochu* explained that the purpose of the standard CGL policy is to provide coverage for damage to *other* property caused by the insured's work or product, not for damage to the insured's work or product itself. 122 Ill. App. 3d at 131.

On appeal, the supreme court affirmed, stating: "[The CGL policy] was intended to provide coverage for a breach of warranty which results in damage to the person or property of others. It was not intended to pay the costs associated with repairing or replacing the insured's defective work or products[.]" (*Brochu*, 105 Ill. 2d at 496, citing *Qualls*, 123 Ill. App. 3d at 833-34.) *Brochu* belies Wil-Freds' argument that *Home Indemnity* is inconsistent with Illinois law.

Moreover, *Home Indemnity*'s holding that a building constitutes a general contractor's own product for purposes of exclusion (n) is consistent with the underlying purpose of CGL insurance. As one frequently cited commentator has noted: "The coverage [of a CGL policy] is for tort liability for physical damage to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained." R. Henderson, *Insurance Protection for Products Liability & Completed Operations—What Every Lawyer Should Know*, 50 Neb. L. Rev. 415, 441 (1971); see also *Bor-Son Building Corp. v. Employers Commercial Union Insurance Co.* (Minn. 1982), 323 N.W.2d 58, 63 (*en banc*) (citing Henderson with approval).

Indeed, as numerous courts have noted, if insurance proceeds could be used to pay for the repair or replacement of poorly constructed buildings, a contractor could receive initial payment for its work and then receive subsequent payment from the insurance company to repair or replace it. (See, *e.g., Centex Homes Corp. v. Prestressed Systems, Inc.* (Fla. App. 1984), 444 So. 2d 66, 67.) This "would transform the [CGL] policy into something akin to a performance bond." (*Qualls*, 123 Ill. App. 3d at 834.) To hold that a CGL policy is the effective equivalent of a performance bond would cause injustice to the CGL insurer who, unlike the surety on a performance bond, has no recourse against a contractor for the use of defective materials or poor workmanship. See *Knutson Construction Co. v. St. Paul Fire & Marine Insurance Co.* (Minn. 1986), 396 N.W.2d 229, 234; see also *Hartford Accident & Indemnity Co. v. Pacific Mutual Life In-*

*surance Co.* (10th Cir. 1988), 861 F.2d 250, 252-53 (CGL policy not intended to function as a performance bond); Tinker, *Comprehensive General Liability Insurance—Perspective & Overview*, 25 Fed'n Ins. Couns. Q. 217, 224 (1975) ("[t]he CGL policy does not serve as a performance bond, nor does it serve as a warranty of goods or services").

Finally, while Wil-Freds cites a number of decisions from other jurisdictions that are contrary to *Home Indemnity*, it fails to note that many others support *Home Indemnity*. (See, *e.g., Home Indemnity Co. v. Miller* (8th Cir. 1968), 399 F.2d 78; *Centex Homes Corp. v. Prestressed Systems, Inc.* (Fla. App. 1984), 444 So. 2d 66; *Indiana Insurance Co. v. DeZutti* (Ind. 1980), 408 N.E.2d 1275; *Kendall Plumbing, Inc. v. St. Paul Mercury Insurance Co.* (1962), 189 Kan. 528, 370 P.2d 396; *Vobill Homes, Inc. v. Hartford Accident & Indemnity Co.* (La. App. 1965), 179 So. 2d 496; *Knutson Construction Co. v. St. Paul Fire & Marine Insurance Co.* (Minn. 1986), 396 N.W.2d 229 (*en banc*); *Weedo v. Stone-E-Brick, Inc.* (1979), 81 N.J. 233, 405 A.2d 788; *Federated Service Insurance Co. v. R.E.W., Inc.* (1989), 53 Wash. App. 730, 770 P.2d 654.) Thus, we reject Wil-Freds' specious argument that *Home Indemnity* "was unable to cite a single decision that had treated a completed building as its 'product.'"

Because we conclude that coverage is precluded by the definition of occurrence in the CGL and by exclusion (n), we decline, as did the court in *Home Indemnity*, to address the exclusions contained in the BFPD endorsement. See *Home Indemnity*, 235 Ill. App. 3d at 974 ("it is necessary only for this court to determine whether coverage was properly excluded by any single clause, or combination of clauses").

For the reasons stated above, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

COLWELL and RATHJE, JJ., concur.