NO. 4-06-0589    Filed 3/19/07

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| COUNTRY MUTUAL INSURANCE COMPANY, | ) | Appeal from |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Piatt County |
| STEVE CARR, d/b/a CARR CONSTRUCTION, | ) | No. 04L15 |
|     Defendant-Appellant, | ) | |
|     and | ) | |
| JON SEEVERS; SEEVERS FARM DRAINAGE, | ) | |
| INC.; RUTH ROLLINGS; and DANA BOWYER, | ) | |
|     Defendants, | ) | |
|     and | ) | |
| STEVE CARR, d/b/a CARR CONSTRUCTION, | ) | |
|     Third-Party Plaintiff, | ) | |
|     v. | ) | Honorable |
| HAROLD VOGELZANG, | ) | John P. Shonkwiler, |
|     Third-Party Defendant. | ) | Judge Presiding. |

_____

JUSTICE KNECHT delivered the opinion of the court:

On an unspecified date, defendant Steve Carr, d/b/a Carr Construction, filed an insurance claim with plaintiff Country Mutual Insurance Company (Country Mutual) with whom he had a commercial general liability (CGL) policy. Country Mutual denied coverage of the claim and, in May 2004, filed a declaratory-judgment action (case No. 04-L-15) seeking a ruling it had no duty under the insurance policy to defend or indemnify defendant.

In March 2006, Country Mutual asked for leave to file a third amended complaint for declaratory judgment against defendant, which the trial court allowed. In that third amended

complaint, Country Mutual argued it had no duty to defend or indemnify Carr because (1) the CGL policy excludes damage to Carr's own work and (2) it alleged no "occurrence" as defined by the policy. That same month, Country Mutual renewed its motion for judgment on the pleadings in case No. 04-L-15. At the hearing on the motion for judgment on the pleadings, Country Mutual's attorney only argued the third amended complaint failed to allege an "occurrence" as defined by the CGL policy. Country Mutual's attorney conceded Country Mutual could no longer rely on the CGL policy's "own-work" exclusion because the complaint in the underlying case alleged that a subcontractor may have performed the work that caused the alleged damage.

In June 2006, the trial court granted Country Mutual's renewed motion for judgment on the pleadings. Carr appeals, arguing the alleged damage in the underlying case (case No. 04-L-8) resulted from an "occurrence" covered by his insurance policy through Country Mutual. We reverse and remand.

I. BACKGROUND

On an unspecified date, Ruth Rollings and Dana Bowyer filed a lawsuit (case No. 04-L-8) against Carr. The record does not contain a copy of this initial complaint. Later, Rollings and Bowyer filed a nine-count third amended complaint against Carr, John Seevers, and Seevers Farm Drainage, Inc. Rollings and Bowyer directed the first three counts of the complaint at Carr.

Rollings and Bowyer sought $69,830.08 in damages. Count I alleged negligence against Carr, claiming either he or his agents or employees:

> "negligently placed inappropriate backfill in and around the basement walls, and there and then negligently operated heavy earthmoving equipment near said walls resulting in the sudden movement of the basement walls, in turn resulting in damage to said basement walls, and to other portions of the residence."

Count II also alleged negligence against Carr. However, in count II, Rollings and Bowyer alleged Carr contracted with Jon Seevers, and/or Seevers Farm Drainage, Inc., to backfill and grade around the basement after the basement was completed. According to count II, Seevers and/or Seevers Farm Drainage, Inc., negligently placed inappropriate backfill around the basement walls and then negligently operated heavy earthmoving equipment close to the basement walls, causing sudden movement and damage to the basement walls. Count III alleged Carr breached an implied warranty to Rollings and Bowyer for the same conduct as was alleged in count I and for failing to construct other portions of the residence in a reasonably workmanlike manner. Rollings and Bowyer directed the other six counts of the complaint against Jon

- 3 -

Seevers and Seevers Farm Drainage, Inc.

In March 2006, Country Mutual renewed its motion for judgment on the pleadings in case No. 04-L-15 after Rollings and Bowyer filed their third-amended complaint in case No. 04-L-8. According to the renewed motion, paragraph 7 of count II of the underlying third amended complaint in case No. 04-L-8 alleged the damage was caused by the negligence of subcontractor Jon Seevers and/or Seevers Farm Drainage, Inc. According to Country Mutual's renewed motion for judgment on the pleadings:

"This additional allegation could have the effect of negating the allegations contained in [p]aragraph 10 of the plaintiff's [s]econd [a]mended [c]omplaint for [d]eclaratory [j]udgment, which alleges the insurance policy in question barred coverage for damage to the insured's own work."

As a result, Country Mutual focused its arguments for a judgment on the pleadings on whether an "occurrence" as defined by the insurance policy in question took place.

In May 2006, the trial court heard arguments on Country Mutual's motion for judgment on the pleadings. At the hearing, the attorney for Country Mutual stated:

"The cases I've cited in my various filings

- 4 -

in support of my [m]otion for [j]udgment on the [p]leadings make it clear that under Illinois law, a construction defect resulting from improper workmanship or poor construction practices does not constitute an occurrence within the definition of a standard commercial liability policy. That's the basis of my argument, that there is no occurrence."

Later during the hearing, Country Mutual's attorney conceded the policy's "own-work" exclusion, on which Country Mutual had previously relied, was "negated by the allegation that the subcontractor may have performed the work."

The trial court allowed Country Mutual's motion for judgment on the pleadings, finding no "occurrence."

This appeal followed.

## II. ANALYSIS

Carr argues the third amended complaint in the underlying case (case No. 04-L-8) alleges an "occurrence" covered by his CGL policy through Country Mutual.

### A. Standard of Review

The standard of review for reviewing a trial court's decision to grant a motion for judgment on the pleadings is <u>de novo</u>. <u>Board of Trustees of the University of Illinois v. City of</u>

<u>Chicago</u>, 317 Ill. App. 3d 569, 571, 740 N.E.2d 515, 517 (2000). The same is true for reviewing a trial court's interpretation of an insurance policy. <u>Travelers Insurance Co. v. Eljer Manufacturing, Inc.</u>, 197 Ill. 2d 278, 292, 757 N.E.2d 481, 491 (2001). In this appeal, we must determine whether the trial court erred in finding the complaint in the underlying case did not allege an "occurrence."

B. Insurance Company's Duty To Defend

The underlying issues in case No. 04-L-15 from which this appeal arises are whether Country Mutual has a duty to defend and possibly indemnify Carr in case No. 04-L-8. An insurance company's duty to defend its policyholder is much broader than its duty to indemnify that same policyholder. <u>Outboard Marine Corp. v. Liberty Mutual Insurance Co.</u>, 154 Ill. 2d 90, 125, 607 N.E.2d 1204, 1220 (1992). To determine whether an insurance company has a duty to defend, the court must compare the allegations in the underlying complaint to the language of the insurance policy at issue. <u>Outboard Marine Corp.</u>, 154 Ill. 2d at 125, 607 N.E.2d at 1220. In so doing, the court must give the allegations in the complaint a liberal construction in favor of the insured. <u>Outboard Marine Corp.</u>, 154 Ill. 2d at 125, 607 N.E.2d at 1220. Further, the court must liberally construe the provisions of the insurance policy in favor of coverage. <u>State Security Insurance Co. v. Burgos</u>, 145 Ill. 2d 423, 438, 583

- 6 -

N.E.2d 547, 554 (1991).  After giving both the allegations in the complaint and the provisions of the policy a liberal construction in favor of the insured having coverage, the court must determine if the "allegations fall within, or <u>potentially</u> <u>within</u>, the policy's coverage."  (Emphasis in original.)  <u>Outboard Marine Corp.</u>, 154 Ill. 2d at 125, 607 N.E.2d at 1220.  If the court finds this to be so, "the insurer has a duty to defend the insured against the underlying complaint."  <u>Outboard Marine Corp.</u>, 154 Ill. 2d at 125, 607 N.E.2d at 1220.  Even if only one of several theories of recovery put forward by a plaintiff is within the potential coverage of the policy, the insurer has a duty to defend the insured on all theories of recovery.  <u>National Union Fire Insurance Co. of Pittsburgh, Pennsylvania v. Glenview Park District</u>, 158 Ill. 2d 116, 124, 632 N.E.2d 1039, 1042-43 (1994).  However, even if an insurer has a duty to defend, whether the insurer will have a duty to indemnify the insured will only be ripe for determination after the insured has incurred liability in the underlying claim against it.  <u>Outboard Marine Corp.</u>, 154 Ill. 2d at 127, 607 N.E.2d at 1221.

C. Relevant Policy Provisions and Their Meanings

According to the general-coverage provision of the CGL policy at issue in this case:

"This insurance applies to 'bodily injury'
and 'property damage' only if:

- 7 -

(1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'; and

(2) The 'bodily injury' or 'property damage' occurs during the policy period."

The CGL policy at issue in this case assigns definitions to certain terms used in the policy. According to these definitions, the policy defines "property damage" as:

"a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it."

The policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

However, the CGL policy at issue does not define "accident." The term has been interpreted in different ways as evidenced by our discussion below. Therefore, the term "accident" in the policy in question is ambiguous. Eljer

Manufacturing, 197 Ill. 2d at 293, 757 N.E.2d at 491.  As a result, for purposes of determining whether the damage to Rollings and Bowyer's residence is the result of an accident, we must give the term a liberal construction in favor of coverage. Burgos, 145 Ill. 2d at 438, 583 N.E.2d at 554.  One popular dictionary defines an "accident" as follows:

> "1a: an unforeseen and unplanned event or circumstance b: lack of intention or necessity: CHANCE *** 2a: an unfortunate event resulting esp. from carelessness or ignorance b: an unexpected and medically important bodily event esp. when injurious *** c: an unexpected happening causing loss or injury which is not due to any fault or misconduct on the part of the person injured but for which legal relief may be sought *** 3: a nonessential property or quality of an entity or circumstance ***."  Merriam Webster's Collegiate Dictionary 7 (11th ed. 2003).

Courts have defined an accident as "an unforeseen occurrence, usually of an untoward or disastrous character or an undesigned sudden or unexpected event of an inflictive or unfortunate character."  Aetna Casualty & Surety Co. v. Freyer, 89 Ill. App.

3d 617, 619, 411 N.E.2d 1157, 1159 (1980). Some courts have also stated that the "natural and ordinary consequences of an act do not constitute an accident." Aetna Casualty & Surety Co., 89 Ill. App. 3d at 619, 411 N.E.2d at 1159; see also State Farm Fire & Casualty Co. v. Tillerson, 334 Ill. App. 3d 404, 409, 777 N.E.2d 986, 990 (2002); Monticello Insurance Co. v. Wil-Freds Construction, Inc., 277 Ill. App. 3d 697, 703, 661 N.E.2d 451, 455 (1996).

The Supreme Court of Illinois has stated a court should not determine whether something is an accident by looking at whether the actions leading to the damage were intentionally done. According to the court, the real question is whether the person performing the acts leading to the result intended or expected the result. If the person did not intend or expect the result, then the result was the product of an accident. United States Fidelity & Guaranty Co. v. Wilkin Insulation Co., 144 Ill. 2d 64, 77-78, 578 N.E.2d 926, 932 (1991); see also Yates v. Bankers Life & Casualty Co., 415 Ill. 16, 19, 111 N.E.2d 516, 517-18 (1953); Lyons v. State Farm Fire & Casualty Co., 349 Ill. App. 3d 404, 409, 811 N.E.2d 718, 723 (2004). We apply this definition to the CGL policy at issue in this case.

### D. Property Damage

To determine if the CGL policy applies to a claim in which a third party is seeking damages against the insured, the

- 10 -

trial court must first determine if the third party has suffered "bodily injury" or "property damage" as defined by the policy. At issue in this case is whether Rollings and Bowyer suffered "property damage."

Rollings and Bowyer allege in the underlying complaint in case No. 04-L-08 that the negligent actions of defendant, his employees, agents, and/or subcontractors resulted in damage to their basement walls and other parts of the residence. They do not allege they only suffered intangible property losses, such as an economic loss, which courts do not usually consider "property damage." Viking Construction Management, Inc. v. Liberty Mutual Insurance Co., 358 Ill. App. 3d 34, 42, 831 N.E.2d 1, 6-7 (2005). They allege physical injury to tangible property, their basement walls. This falls within the broad definition of "property damage" given by the policy.

### E. Occurrence

If property damage occurred, the trial court must then determine if that property damage resulted from an "occurrence" as defined by the policy. In the underlying complaint in case No. 04-L-8, the two negligence counts against Carr simply allege that either Carr himself, his agents or employees, or his subcontractor used inappropriate backfill around the basement walls and then negligently operated heavy earthmoving equipment immediately adjacent to the basement walls. The counts allege

these activities resulted in the sudden movement of the basement walls. The counts further allege the movement of the walls resulted in damage to those same walls and other parts of the residence. The underlying complaint does not contain allegations that defendant, his employees or agents, or subcontractors intended or expected, by their use of allegedly inappropriate backfill material or their allegedly negligent operation of heavy earthmoving equipment near the basement walls, that the walls would move or be damaged. Under our supreme court's definition of what constitutes an "accident," the allegations of the complaint in case No. 04-L-8 allege an "accident."

As a result, we find the allegations in the underlying complaint describe an "occurrence" as defined by the policy at issue. The allegations in counts I and II of the underlying complaint fall within the provisions of the general coverage provisions of the policy at issue.

### F. Policy Exclusions

Because the policy's definitions for "occurrence" and "property damage" are so broad, it would appear the policy could be in danger of being construed as something akin to a performance bond. Our supreme court has stated:

> "'[C]omprehensive general liability policies
> *** are intended to protect the insured from
> liability for injury or damage to the persons

or property of others; they are not intended to pay the costs associated with repairing or replacing the insured's defective work and products, which are purely economic losses. [Citations.] Finding coverage for the cost of replacing or repairing defective work would transform the policy into something akin to a performance bond.'" <u>Eljer Manufacturing</u>, 197 Ill. 2d at 314, 757 N.E.2d at 503, quoting <u>Qualls v. Country Mutual Insurance Co.</u>, 123 Ill. App. 3d 831, 833-34, 462 N.E.2d 1288, 1291 (1984).

The policy in this case is not akin to a performance bond given the "exclusions" section of the policy. The "exclusions" section excludes numerous types of injuries and liabilities that would otherwise fall within the broad category of events to which this insurance would apply.

However, Country Mutual failed to identify any specific exclusions contained in the underlying policy into which the allegations in the underlying complaint would fall. It is the insurer's burden to affirmatively demonstrate the applicability of an exclusion. As a result, in the posture of this case, Country Mutual will have to establish a policy exclusion applies if it wants to avoid defending Carr in case No. 04-L-8.

- 13 -

G. Authority Cited by Country Mutual

Country Mutual cites several cases decided by other districts of the Illinois Appellate Court in support of its position that an occurrence did not take place in this case.  See Indiana Insurance Co. v. Hydra Corp., 245 Ill. App. 3d 926, 615 N.E.2d 70 (1993); Wil-Freds, 277 Ill. App. 3d 697, 661 N.E.2d 451; Tillerson, 334 Ill. App. 3d 404, 777 N.E.2d 986; Viking, 358 Ill. App. 3d 34, 831 N.E.2d 1.  While these decisions are relevant, they are not determinative of whether the alleged negligent acts of defendant, his employees or agents, and his subcontractor constitute an "occurrence" in the case at bar.

Further, these cases are distinguishable from the instant case as the underlying complaints in those cases alleged contractual or warranty breaches, not negligence as in the instant case.  See Hydra, 245 Ill. App. 3d at 929, 615 N.E.2d at 73; Wil-Freds, 277 Ill. App. 3d at 699, 661 N.E.2d at 452; Tillerson, 334 Ill. App. 3d at 406, 777 N.E.2d at 988; Viking, 358 Ill. App. 3d at 36, 831 N.E.2d at 2.  This is not to say that a breach-of-contract claim can never allege an "occurrence."

Most important, while past decisions might help in interpreting an insurance policy, a court must make the ultimate determination in each case whether an "occurrence" took place pursuant to the allegations in the underlying complaint and the terms of the insurance policy at issue in that case.

## III. CONCLUSION

For the reasons stated, we reverse and remand the trial court's judgment.

Reversed and remanded.

COOK and TURNER, JJ., concur.