**AMERICAN FIRE & CASUALTY COMPANY, Plaintiff,**

v.

**BROEREN RUSSO CONSTRUCTION, INC., an Illinois corporation, Defendant.**

No. 98–CV–2109.

United States District Court, C.D. Illinois, Danville/Urbana Division.

July 12, 1999.

Robert M. Chemers, Amy E. Johnson, John M. McGregor, Michael A. Clarke, Pretzel & Stouffer, Chicago, IL, for plaintiff.

Richard T. West, Meyer, Capel, Hirschfeld, Muncy, Jahn & Aldeen, Champaign, IL, for defendant.

### ORDER

McCUSKEY, District Judge.

On May 11, 1998, Plaintiff, American Fire & Casualty Company, filed a Complaint for Declaratory Judgment (# 1) against Defendant, Broeren Russo Construction, Inc. This case is now before the court for ruling on Plaintiff's Motion for Judgment on the Pleadings (# 14), Plaintiff's Motion to Strike (# 19) and an Agreed Motion for Enlargement of Time (# 25) seeking to extend the discovery deadlines if this court denies Plaintiff's Motion for Judgment on the Pleadings.

Following careful review, Plaintiff's Motion for Judgment on the Pleadings (# 14) is GRANTED. Accordingly, Plaintiff's Motion to Strike (# 19) and the parties' Agreed Motion for Enlargement of Time (# 25) are DENIED as moot.

### FACTS

Plaintiff's Complaint for Declaratory Judgment alleged that this court has jurisdiction over the action based upon diversity of citizenship (28 U.S.C. § 1332). Plaintiff alleged that it issued a policy to Defendant for Commercial General Liability Insurance for the policy period of February 28, 1996, to February 27, 1997. On March 16, 1998, KDB III Enterprises, L.L.P. (KDB), filed a complaint against Defendant in the circuit court of Champaign County. Defendant tendered its defense to Plaintiff, and Plaintiff accepted the tender subject to a reservation of rights. In its Complaint, Plaintiff requested a declaration from this court that it has no duty to defend Defendant in the action pending in the circuit court of Champaign County. Plaintiff argued that it had no duty to defend because: (1) the claimed damage occurred before the first date of coverage; (2) the policy did not provide coverage for the claims in the underlying action; and (3) Defendant knew or had reason to know of the loss prior to the inception of the policy on February 28, 1996, so that the risk was a "known loss" and not covered by the policy.

Plaintiff attached to its Complaint for Declaratory Judgment a copy of the insurance policy issued to Defendant. The policy provided that Plaintiff "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily

injury' or 'property damage' to which this insurance applies." The policy also stated that "[t]his insurance applies to 'bodily injury' and 'property damage' only if: (1)[t]he 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory;' and (2)[t]he 'bodily injury' or 'property damage' occurs during the policy period." The policy defined "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

Plaintiff also attached to its Complaint a copy of the underlying KDB complaint and attachments. In the underlying complaint, KDB alleged that Defendant entered into a contract on February 26, 1990, to furnish, install and deliver an Exterior Insulation Finish System (System) during the construction of the Trade Centre South Building (Building) in Champaign, Illinois. The purpose of the System was to prevent water from leaking to the interior of the Building. The contract specified that Defendant was responsible for providing a proper and complete installation of the System. Work ceased on the Building in 1991, and KDB rented space in the Building to tenants. The System was warranted by Defendant for a period of one year. KDB alleged that water has leaked into the Building from the time tenants rented the Building to the present date. KDB alleged that Defendant attempted to remedy the defective installation of the System but Defendant's efforts did not stop the leaking.

KDB further alleged that it entered into an agreement with Defendant in April 1995 to remedy the defective installation of the System. Defendant completed the remedial repair work on June 30, 1995. Defendant provided a 15–month warranty for the remedial work. KDB notified Defendant on May 29, 1996, that the remedial work did not stop the leaking. In this letter, KDB also stated that Defendant failed to repair the interior drywall and ceiling tile as agreed. KDB alleged that

Defendant has made no further efforts to remedy the problem. KDB alleged that "Defendant has been and continues to be in breach of the Contract and the Agreement." KDB alleged that, "as a direct and proximate result of these breaches of contract by Defendant, [KDB] has incurred extensive structural and aesthetic damage to the exterior and interior" of the Building. KDB sought damages in the amount of $685,908.41 based on Defendant's breach of contract. KDB alleged that these damages were for money expended in its attempt to stop the leaking, the cost of complete and proper reinstallation of the System and related water damage repairs.

On November 3, 1998, Plaintiff filed a Motion for Judgment on the Pleadings (# 14). In its Memorandum of Law in support of the Motion, Plaintiff contended that it does not have a duty to defend Defendant with respect to the breach of contract action filed by KDB. Plaintiff argued that the allegations of the underlying KDB complaint are not within, or even potentially within, the coverage provided by the policy. Plaintiff argued that this is because: (1) the KDB complaint does not allege an "occurrence" as defined by the policy; (2) there are no allegations of "property damage" as defined by the policy; and (3) coverage is precluded by three separate exclusions contained in the policy. Plaintiff contended that the sole issue before the court is the purely legal question of whether the underlying KDB complaint raises a duty to defend under the policy issued by Plaintiff.

On November 17, 1998, Defendant filed a Memorandum in Opposition to Plaintiff's Motion (# 16). Defendant argued that Plaintiff has a duty to defend under the terms of the policy. Defendant contended that the KDB complaint is at least potentially within the coverage of the policy because the complaint clearly alleges damage to property other than that supplied by Defendant. Defendant also argued that it cannot be assumed that the cause of

the damage was faulty workmanship on the part of Defendant. In support of this argument, Defendant attached a copy of a Third–Party Complaint it filed in the circuit court of Champaign County in the underlying cause of action. In the Third–Party Complaint, Defendant alleged that the negligence of other subcontractors involved in the construction of the Building proximately caused or contributed to the damages allegedly incurred by KDB.

On December 14, 1998, Plaintiff filed a Motion to Strike (# 19). Plaintiff asserted that Defendant's reference to the Third–Party Complaint and the attached Third–Party Complaint should be stricken from Defendant's Memorandum. On June 28, 1999, the parties filed an Agreed Motion for Enlargement of Time (# 25), seeking to extend the discovery deadlines if this court denies Plaintiff's Motion for Judgment on the Pleadings.

## ANALYSIS

■ A Rule 12(c) judgment on the pleadings is " 'designed to provide a means of disposing of cases when the material facts are not in dispute and a judgment on the merits can be achieved by focusing on the content of the pleadings and any facts of which the court will take judicial notice.' " *Continental X–Ray Corp. v. Home Indem. Co.,* 1997 WL 102537, at *2 (N.D.Ill.1997) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1367 (1990)). A Rule 12(c) motion is subject to the same standard as a Rule 12(b)(6) motion to dismiss and " 'should not be granted unless it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief.' " *GATX Leasing Corp. v. National Union Fire Ins. Co.,* 64 F.3d 1112, 1114 (7th Cir.1995) (quoting *Thomason v. Nachtrieb,* 888 F.2d 1202, 1204 (7th Cir.1989)); *Continental X–Ray Corp.,* 1997 WL 102537, at *2. When the plaintiff is the moving party, the motion should not be granted unless it appears beyond doubt that the non-moving party cannot prove

facts sufficient to support his position. See *Continental X–Ray Corp.,* 1997 WL 102537, at *5–6. In ruling on a Rule 12(c) motion, this court must view the facts in a light most favorable to the non-moving party. *Flenner v. Sheahan,* 107 F.3d 459, 461 (7th Cir.1997); *Continental X–Ray Corp.,* 1997 WL 102537, at *2. A judgment on the pleadings is proper when only questions of law, and not questions of fact, exist after the pleadings have been filed. *Indiana Ins. Co. v. Hydra Corp.,* 245 Ill. App.3d 926, 185 Ill.Dec. 775, 615 N.E.2d 70, 72 (1993), appeal denied, 152 Ill.2d 559, 190 Ill.Dec. 889, 622 N.E.2d 1206 (1993).

■ Both parties agree that Illinois law governs the policy at issue in this diversity case. See *Prisco Serena Sturm Architects, Ltd. v. Liberty Mut. Ins. Co.,* 126 F.3d 886, 890 (7th Cir.1997). To determine whether the insurer has a duty to defend the insured, the court must look to the allegations included in the underlying complaint and compare those allegations to the relevant provisions of the insurance policy. *Outboard Marine Corp. v. Liberty Mut. Ins. Co.,* 154 Ill.2d 90, 180 Ill.Dec. 691, 607 N.E.2d 1204, 1212 (1992). An insurer's duty to defend is much broader than its duty to indemnify. *Crum & Forster Managers Corp. v. Resolution Trust Corp.,* 156 Ill.2d 384, 189 Ill.Dec. 756, 620 N.E.2d 1073, 1079 (1993); see also *Nationwide Ins. v. Board of Trustees of Univ. of Illinois,* 116 F.3d 1154, 1155 n. 2 (7th Cir.1997). If the facts alleged in the underlying complaint fall within, or even potentially within, the policy's coverage, the insurer has a duty to defend. *Outboard Marine Corp.,* 180 Ill.Dec. 691, 607 N.E.2d at 1212. Refusal to defend is unjustifiable unless it is clear from the face of the underlying complaint that the facts alleged do not fall potentially within the policy's coverage. *Outboard Marine Corp.,* 180 Ill.Dec. 691, 607 N.E.2d at 1212.

■ The construction of an insurance policy is a question of law. *American States Ins. Co. v. Koloms,* 177 Ill.2d 473, 227 Ill.Dec. 149, 687 N.E.2d 72, 75 (1997).

A court's primary objective in construing the language of the policy is to ascertain and give effect to the intentions of the parties as expressed in their agreement, the insurance policy. *Koloms*, 227 Ill.Dec. 149, 687 N.E.2d at 75. "A court must construe the policy as a whole and take into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract." *Koloms*, 227 Ill.Dec. 149, 687 N.E.2d at 75. The court must look to the nature of the policy at issue and the risks undertaken by the insurer. *Outboard Marine Corp.*, 180 Ill.Dec. 691, 607 N.E.2d at 1215. When construing an insurance policy, the court must strive to give each term in the policy meaning unless doing so would render the clause or policy inconsistent or inherently contradictory. *State Farm Fire & Cas. Co. v. Martin*, 710 N.E.2d 1228, 238 Ill. Dec. 126, 186 Ill.2d 367 (1999). The policy should be liberally construed with any uncertainty resolved in favor of the insured. *Hydra Corp.*, 185 Ill.Dec. 775, 615 N.E.2d at 72–73. If the language of the policy is ambiguous, the court must construe the policy in favor of the insured and against the insurer that drafted the policy. *Employers Ins. of Wausau v. Ehlco Liquidating Trust*, 186 Ill.2d 127, 237 Ill.Dec. 82, 708 N.E.2d 1122, 1130 (1999). However, where a provision is clear and unambiguous, it will be applied as written (*Monticello Ins. Co. v. Wil–Freds Constr., Inc.*, 277 Ill.App.3d 697, 214 Ill.Dec. 597, 661 N.E.2d 451, 454 (1996)), giving the words in the policy their plain, ordinary and popular meaning (*Lapham–Hickey Steel Corp. v. Protection Mut. Ins. Co.*, 166 Ill.2d 520, 211 Ill.Dec.459, 655 N.E.2d 842, 846 (1995)).

The type of policy at issue here is a comprehensive general liability (CGL) policy, also referred to as a commercial general liability policy. Defendant concedes that, under Illinois law, CGL policies "are intended to provide coverage for injury or damage to the person or property of others; they are not intended to pay costs associated with repairing or replacing an insured's defective work and products which are purely economic losses." See *Western Cas. & Sur. Co. v. Brochu*, 105 Ill.2d 486, 86 Ill.Dec. 493, 475 N.E.2d 872, 877 (1985); *Pekin Ins. Co. v. Richard Marker Assocs., Inc.*, 289 Ill.App.3d 819, 224 Ill.Dec. 801, 682 N.E.2d 362, 365 (1997), appeal denied, 175 Ill.2d 531, 228 Ill.Dec. 719, 689 N.E.2d 1140 (1997); see also *Continental X–Ray Corp.*, 1997 WL 102537, at *3.

 In construing the policy at issue here, keeping in mind the nature of the policy and the risks intended to be covered, this court concludes that the KDB complaint does not allege facts which fall within, or even potentially within, the policy's coverage. This court concludes that the KDB complaint does not allege property damage caused by an "occurrence," as defined by the policy. CGL policies are "occurrence-based" policies of insurance. *Outboard Marine Corp.*, 180 Ill.Dec. 691, 607 N.E.2d at 1219. As noted previously, the policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policy does not define "accident." However, "[w]hen construing CGL policies, courts define an accident as 'an unforeseen occurrence, usually of an untoward or disastrous character or an undesigned sudden or unexpected event of an inflictive or unfortunate character.'" *Monticello Inc. Co.*, 214 Ill.Dec. 597, 661 N.E.2d at 455; see also *Hydra Corp.*, 185 Ill.Dec. 775, 615 N.E.2d at 73. "The use of the word 'occurrence' in insurance policies broadens coverage and eliminates the need to find an exact cause of damages as long as they are neither intended nor expected by the insured." *Hydra Corp.*, 185 Ill.Dec. 775, 615 N.E.2d at 73. However, the occurrence must still be accidental. *Hydra Corp.*, 185 Ill.Dec. 775, 615 N.E.2d at 73. "An accident, by its very nature contemplates an event that is unforeseen and neither intended nor expected." *Diamond State Ins. Co. v. Chester–Jensen Co.*, 243 Ill.App.3d 471, 183 Ill.Dec. 435, 611 N.E.2d

1083, 1091 (1993). In construing an occurrence provision in a CGL policy, it is the property damage that must be unexpected and unintended. See *Outboard Marine Corp.*, 180 Ill.Dec. 691, 607 N.E.2d at 1220; see also *Huntzinger v. Hastings Mut. Ins. Co.*, 143 F.3d 302, 313–14 (7th Cir.1998) (the "occurrence" must cause the property damage in order to be covered under the policy).

The mere failure of a product to perform as warranted is not beyond the realm of expectation and is foreseeable by the parties. In fact, it is this expectation that provides the impetus for requiring a warranty from the vendor in the first place. While such failure is most likely to be unintentional, it cannot be considered an 'accident' within the meaning of the policy because the 'natural and ordinary consequences of an act do not constitute an accident. *Diamond State Ins. Co.*, 183 Ill.Dec. 435, 611 N.E.2d at 1092; see also *Continental X–Ray Corp.*, 1997 WL 102537, at *4.

Accordingly, the law is well settled, in Illinois and in other jurisdictions, that the natural results of negligent and unworkmanlike construction of a building do not constitute an "occurrence." *Monticello Ins. Co.*, 214 Ill.Dec. 597, 661 N.E.2d at 456 (and cases cited therein); *Hydra Corp.*, 185 Ill.Dec. 775, 615 N.E.2d at 73; *Wm. C. Vick Constr. Co. v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, 52 F.Supp.2d 569, 582–86 (E.D.N.C.1999); *R.N. Thompson & Assocs., Inc. v. Monroe Guar. Ins. Co.*, 686 N.E.2d 160, 164–65 (Ind.Ct.App.1997), transfer denied, 698 N.E.2d 1191 (Ind. 1998).

In *Monticello Ins. Co.*, the underlying complaint alleged a multitude of construction defects in the construction of a three-story municipal building and an adjoining 400–car parking garage. The alleged defects included water damage to the lobby and basement underneath the lobby, interior water damage caused by water penetration of the roof, and cracked terrazzo floors and stairwells. *Monticello Ins. Co.*, 214 Ill.Dec. 597, 661 N.E.2d at 452. In determining whether the allegations of the underlying complaint were within, or potentially within, the coverage of the CGL policy at issue in that case, the court stated that it must first determine whether the complaint alleged an accident. *Monticello Ins. Co.*, 214 Ill.Dec. 597, 661 N.E.2d at 455. The court stated that only if it answered that question in the affirmative would it have to determine if the accident resulted in property damage. *Monticello Ins. Co.*, 214 Ill.Dec. 597, 661 N.E.2d at 455. The court then noted that the underlying action was a breach of contract claim alleging the defective construction of a building which resulted in damage to the building itself. *Monticello Ins. Co.*, 214 Ill.Dec. 597, 661 N.E.2d at 456. The court held that the construction defects set forth in the underlying complaint were the natural and ordinary consequences of the improper construction techniques of the defendant and its subcontractors and "thus, do not constitute an occurrence within the definition in the CGL policy." *Monticello Ins. Co.*, 214 Ill.Dec. 597, 661 N.E.2d at 456.

In *Hydra Corp.*, the underlying complaint alleged that, after the defendant constructed a building, paint did not adhere to the exterior of the building and numerous cracks appeared in the concrete floor. The complaint alleged that the defendant breached its contractual obligation to furnish work, labor and materials of good and workmanlike quality. *Hydra Corp.*, 185 Ill.Dec. 775, 615 N.E.2d at 73. The court concluded that the damages alleged in the underlying complaint were not the result of an accident. *Hydra Corp.*, 185 Ill.Dec. 775, 615 N.E.2d at 73. The court found that "the cracks in the floor and the loose paint on the exterior of the building are the natural and ordinary consequences of installing defective concrete flooring and applying the wrong type of paint." *Hydra Corp.*, 185 Ill.Dec. 775, 615 N.E.2d at 73.

In this case, the KDB complaint alleged that Defendant was in breach of a contract to furnish, install and deliver the System, the purpose of which was to prevent water from leaking to the interior of the Building. The KDB complaint alleged that the System was not installed properly, allowing water to leak into the Building. The damages claimed in the KDB complaint were damages caused solely by Defendant's alleged breach of contract in failing to properly install the System and in failing to remedy the problem. This court concludes that the damages alleged were the natural and ordinary consequences of the alleged breach of contract. This court notes that it is inconceivable that the parties would not have foreseen damage from water leaking into the building as a possible result of the failure of the System to prevent such leaking. See *Diamond State Ins. Co.*, 183 Ill.Dec. 435, 611 N.E.2d at 1092. Accordingly, this court concludes that the facts alleged in the KDB complaint fall squarely within the analysis of *Monticello Ins. Co.* and *Hydra Corp.* As a result, this court concludes that the damages alleged in the underlying KDB complaint were not the result of an "occurrence" and are not covered, or potentially covered, under the CGL policy issued by Plaintiff.

Defendant argues that this case is distinguishable because the KDB complaint alleged damage to property other than that supplied by Defendant, such as interior drywall and ceiling tile. Defendant first relies on *United States Fidelity & Guar. Co. v. Wilkin Insulation Co.*, 144 Ill.2d 64, 161 Ill.Dec. 280, 578 N.E.2d 926 (1991). This court concludes that *Wilkin Insulation Co.* is distinguishable from the facts here. In *Diamond State Ins. Co.*, the court stated as follows:

> *Wilkin* involved the installation of products which directly damaged the building through the dissemination and impregnation of asbestos fibers throughout the premises. Moreover, the damage was not a result of the failure of the asbestos to perform its contractual function as an insulator. Rather its detrimental impact was caused by a wholly ancillary and coincidental phenomenon, namely the diffusion of its harmful fibers.
>
> Therefore, unlike the facts in this case, the resulting condition in *Wilkin* was not encompassed by the normal expectancies which are inherent in the risk of product or performance failure. Furthermore, the court in *Wilkin* specifically found that the hazards now known to be inherent in asbestos use as insulation were neither known nor intended by the parties when installed. *Diamond State Ins. Co.*, 183 Ill.Dec. 435, 611 N.E.2d at 1092.

This court agrees with the court's analysis of *Wilkin* in *Diamond State Ins. Co.* and finds that this case is distinguishable from *Wilkin* for the same reason. In this case, also, the resulting damages clearly were "encompassed by the normal expectancies which are inherent in the risk of product or performance failure."

Defendant also relies on *Marathon Plastics, Inc. v. International Ins. Co.*, 161 Ill.App.3d 452, 112 Ill.Dec. 816, 514 N.E.2d 479 (1987), appeal denied, 119 Ill.2d 559, 119 Ill.Dec. 387, 522 N.E.2d 1246 (1988), and *Trovillion v. United States Fidelity & Guar. Co.*, 130 Ill.App.3d 694, 86 Ill.Dec. 39, 474 N.E.2d 953 (1985), overruled on other grounds by *Bonnie Owen Realty, Inc. v. Cincinnati Ins. Co.*, 283 Ill.App.3d 812, 219 Ill.Dec. 294, 670 N.E.2d 1182 (1996). In *Marathon Plastics, Inc.*, the court concluded that coverage was not excluded by a policy exclusion because property damage occurred due to a "diminution in value to the [water] system caused by the leaks." *Marathon Plastics, Inc.*, 112 Ill.Dec. 816, 514 N.E.2d at 485. However, the court did not discuss whether the property damage was caused by an "occurrence." Further, the decision in *Marathon Plastics, Inc.* has been criticized as "inconsistent with the clear language and underlying purpose of the policies." *Dia-*

*mond State Ins. Co.,* 183 Ill.Dec. 435, 611 N.E.2d at 1091.

In *Trovillion,* the court concluded that coverage was not excluded by the policy's exclusions for "property damage to the Named Insured's products" or "property damage to work performed by or on behalf of the Named Insured" because there could be coverage for damage to products or materials other than those furnished by the insured. *Trovillion,* 86 Ill.Dec. 39, 474 N.E.2d at 957–58. However, in *Trovillion,* the insurance company did not contend that the damage did not result from an "occurrence," so that was not an issue in the case. *Trovillion,* 86 Ill.Dec. 39, 474 N.E.2d at 956. This court finds that neither *Marathon Plastics, Inc.* nor *Trovillion* are applicable to the issue squarely raised in this case, whether the property damage was caused by an "occurrence" as defined by the CGL policy.

Defendant also relies on *Pekin Ins. Co.* In that case, the underlying complaint alleged that the insured's failure to properly construct a building caused the water pipes to burst, resulting in significant property damage to "carpeting, drywall, antique furniture, clothing, personal mementoes and pictures." *Pekin Ins. Co.,* 224 Ill.Dec. 801, 682 N.E.2d at 363. The court found that the insurance company had a duty to defend because the insured's faulty workmanship caused damage to property other than the building itself, including damage to furniture, clothing and antiques. *Pekin Ins. Co.,* 224 Ill.Dec. 801, 682 N.E.2d at 366. The court found that these allegations fell within the meaning of an accident and an occurrence. *Pekin Ins. Co.,* 224 Ill.Dec. 801, 682 N.E.2d at 366. The court distinguished both *Hydra Corp.* and *Monticello Ins. Co.* because "the complaint in each of those cases did not allege damage to other property, only to the building itself." *Pekin Ins. Co.,* 224 Ill. Dec. 801, 682 N.E.2d at 365.

In this case, the KDB complaint alleged only that the water leaks caused damage to the exterior and interior of the building, including interior drywall and ceiling tile. This court concludes that these allegations cannot be distinguished from the allegations of damage to the building in *Monticello Ins. Co.* There, the underlying complaint alleged water damage to the lobby and basement underneath the lobby, interior water damage caused by water penetration of the roof, and cracked terrazzo floors and stairwells. The court held that the underlying complaint did not include a claim for damage to property other than the building itself and did "not constitute an occurrence within the definition in the CGL policy." *Monticello Ins. Co.,* 214 Ill. Dec. 597, 661 N.E.2d at 456. Also, the court in *Pekin Ins. Co. v. Willett,* 301 Ill.App.3d 1034, 235 Ill.Dec. 350, 704 N.E.2d 923, 926–27 (1998), found no coverage where "the underlying complaint alleges only damage to the structure worked on by [the insured], namely, the swimming pool." Here, as in *Monticello Ins. Co.* and *Willett,* the only damage alleged was to the structure worked on by Defendant, the Building. Accordingly, this court finds no "occurrence" and no coverage.

Defendant additionally argues that it cannot be assumed that its faulty workmanship caused the damage. In support of this contention, Defendant has attached a copy of a Third–Party Complaint it has filed in the underlying action. In its Third–Party Complaint, Defendant has sued two of its subcontractors alleging that their negligence caused or contributed to the damages alleged by KDB. Even if this court accepted as true Defendant's allegations in its Third–Party Complaint that it was the unworkmanlike conduct of its subcontractors which caused the damage to the Building, the alleged damages from water leaking were still the foreseeable result of negligent and unworkmanlike conduct in installing the System. Accordingly, the damages alleged in the underlying KDB complaint were not the result of an "occurrence."

Because this court has concluded that the damages alleged in the underlying

KDB complaint were not the result of an "occurrence" and are not covered, or potentially covered, under the CGL policy issued by Plaintiff, there is no need to rule upon Plaintiff's other policy defenses. See *Hydra Corp.*, 185 Ill.Dec. 775, 615 N.E.2d at 75.

IT IS THEREFORE ORDERED THAT:

(1) Plaintiff's Motion for Judgment on the Pleadings (# 14) is GRANTED.

(2) Plaintiff's Motion to Strike (# 19) is DENIED as moot.

(3) The parties' Agreed Joint Motion for Enlargement of Time (# 25) is DENIED as moot.

This case is terminated. The parties shall be responsible for their own court costs.