ALL AMERICA INSURANCE COMPA-NY and Central Mutual Insurance Company, Plaintiffs,

v.

BROEREN RUSSO CONSTRUCTION, INC., Defendant.

No. 99–CV–2262.

United States District Court, C.D. Illinois, Danville/Urbana Division.

Sept. 14, 2000.

Robert M. Chemers, John G. Fogarty, Pretzel & Stouffer, Chicago, IL, for Plaintiffs.

Richard T. West, Meyer, Capel, P.C., Champaign, IL, for Defendant.

## ORDER

McCUSKEY, District Judge.

On October 29, 1999, Plaintiffs, All America Insurance Company and Central Mutual.Insurance Company, filed a Complaint for Declaratory Judgment (# 1) against Defendant, Broeren Russo Construction, Inc. This case is now before the court for ruling on Plaintiffs' Motion for Judgment on the Pleadings (# 6) and Plaintiffs' Motion to Strike Defendant's Affirmative Defenses (# 8).

Following careful review, Plaintiffs' Motion for Judgment on the Pleadings (# 6) is GRANTED. Plaintiffs' Motion to Strike Affirmative Defenses (# 8) is also GRANTED.

## I. FACTS

Plaintiffs' Complaint for Declaratory Judgment alleged that this court has jurisdiction over the action based upon diversity of citizenship (28 U.S.C. § 1332). All America Insurance alleged that it issued a policy to Defendant for Commercial General Liability Insurance for the policy period of February 28, 1993, to February 28, 1994. Central Mutual alleged that it issued a policy to Defendant for Excess Liability Insurance for the same policy period. On March 16, 1998, KDB III Enterprises, L.L.P. (KDB), filed a complaint against Defendant in the circuit court of Champaign County. Defendant tendered its defense to All America Insurance, and All America accepted the tender subject to a reservation of rights.

In their Complaint, Plaintiffs requested a declaration from this court that they have no duty to defend Defendant in the action pending in the circuit court of Champaign County. Plaintiffs argued they had no duty to defend because: (1) the claimed damage occurred before the first date of coverage; (2) there were no allegations of an occurrence or property damage in the underlying action as defined by the insurance policy; and (3) coverage is precluded by three separate exclusions contained in the policy. Furthermore, Plaintiffs argued that Defendant is collaterally estopped by the decision of this court in *American Fire & Casualty Company v. Broeren Russo Construction, Inc.*, 54 F.Supp.2d 842 (C.D.Ill.1999), from contending that an occurrence is alleged by the action pending in the circuit court of Champaign County.

Plaintiffs attached to their Complaint for Declaratory Judgment a copy of the insurance policy issued to Defendant. The policy issued by All America provided that "[t]his insurance applies to 'bodily injury' and 'property damage' only if (1)[t]he 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory;' and (2)[t]he 'bodily injury' or 'property damage' occurs during the policy period." The policy defined "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Similarly, Central Mutual's excess insurance policy defined an occurrence as "an accident, or happening or event, or a continuous or repeated exposure to condi-

tions which unexpectedly or unintentionally results in 'bodily injury' or 'property damage.' "

Plaintiffs also attached to their Complaint a copy of the underlying KDB complaint and attachments. In the underlying complaint, KDB alleged that Defendant entered into a contract on February 26, 1990, to furnish, install, and deliver an Exterior Insulation Finish System (System) during the construction of the Trade Centre South Building (Building) in Champaign, Illinois. The purpose of the System was to prevent water from leaking to the interior of the Building. The contract specified that Defendant was responsible for providing a proper and complete installation of the System. Work ceased on the Building in 1991, and KDB rented space in the Building to tenants. The System was warranted by Defendant for a period of one year. KDB alleged that water had leaked into the Building from the time tenants rented the Building to the present date. KDB alleged that Defendant attempted to remedy the defective installation of the System but Defendant's efforts did not stop the leaking.

KDB further alleged that it entered into an agreement with Defendant in April 1995 to remedy the defective installation of the System. Defendant completed the remedial repair work on June 30, 1995. Defendant provided a 15–month warranty for the remedial work. KDB notified Defendant on May 29, 1996, that the remedial work did not stop the leaking. In this letter, KDB also stated that Defendant failed to repair the interior drywall and ceiling tile as agreed. KDB alleged that Defendant has made no further efforts to remedy the problem. KDB alleged that "Defendant has been and continues to be in breach of the Contract and the Agreement." KDB alleged that, "as a direct and proximate result of these breaches of contract by Defendant, [KDB] has incurred extensive structural and aesthetic damage to the exterior and interior" of the Building. KDB sought damages in the amount of $685,908.41 based on Defendant's breach of contract. KDB alleged that these damages were for money expended in its attempt to stop the leaking, the cost of complete and proper reinstallation of the System and related water damage repairs.

Two separate letters were issued by All America to Defendant to reserve its rights under the policy. The first of these was issued on June 2, 1998. In this letter, All America indicated that it was reserving its rights under the policy for the following reasons: (1) the policy applied to bodily injury and property damage only if such damage occurred during the policy period; (2) the policy excludes damage being claimed due to the insured's work product; and (3) "any other material reasons." The letter went on to state that All America did "not waive any of its rights or admit any obligation under the policy." A second reservation of rights letter was issued on October 27, 1999, this time by both All America and Central Mutual. This second letter more specifically enumerated the grounds on which Plaintiffs were reserving their rights under the policy, including reference to the policy provision which explains that coverage will be provided for bodily injury and property damage only if it is caused by an "occurrence."

In its answer, Defendant raised the affirmative defenses of waiver, estoppel, breach of duty of good faith and fair dealing, and laches due to Plaintiffs failure to specifically enumerate all policy defenses in the reservation of rights letter dated June 2, 1998. Defendant argued that by failing to delineate all potential policy defenses until the October 27, 1999, letter, Plaintiffs failed to exercise ordinary diligence and prejudiced the Defendant. Defendant argues this prejudice arose because it surrendered its right to select its own counsel and control its own defense.

On January 20, 2000, Plaintiffs filed a Motion for Judgment on the Pleadings (# 6) and a Motion to Strike Defendant's Affirmative Defenses (# 8). In its Memo-

randum of Law in support of the motion, Plaintiffs contended that Defendant is collaterally estopped from relitigating the issue of whether an "occurrence" was alleged by KDB under the All America and Central Mutual policies due the this court's decision in *American Fire*. In *American Fire*, this court concluded that the damages alleged in the underlying KDB complaint were not the result of an "occurrence" and were not covered under the Commercial General Liability Insurance issued by American Fire. *American Fire*, 54 F.Supp.2d at 850. American Fire defined an occurrence identically to All America and very similar to Central Mutual. *American Fire*, 54 F.Supp.2d at 844.

On February 29, 2000, Defendant filed a Response to Plaintiffs' Motion for Judgment on the Pleadings. Defendant argued that *American Fire* involved different issues from the present case, thereby making collateral estoppel inappropriate. Specifically, Defendant contends that American Fire properly reserved its rights under the policy by reserving the "occurrence" issue in its first letter to Defendant dated April 30, 1998. Defendant further argues that because Plaintiffs failed to cite the "occurrence" provision in a reservation of rights letter until sixteen months after their initial reservation of rights letter, All America and Central Mutual should be precluded from asserting the "no occurrence" policy defense due the doctrines of waiver, estoppel, breach of good faith and fair dealing, and laches.

## II. ANALYSIS

 A Rule 12(c) judgment on the pleadings is "designed to provide a means of disposing of cases when the material facts are not in dispute and a judgment on the merits can be achieved by focusing on the content of the pleadings and any facts of which the court will take judicial notice.'" *Continental X–Ray Corp. v. Home Indem. Co.*, 1997 WL 102537, at *2 (N.D.Ill.1997) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Prac-

tice & Procedure § 1367(1990). A Rule 12(c) motion is subject to the same standard as a Rule 12(b)(6) motion to dismiss and " 'should not be granted unless it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief.' " *GATX Leasing Corp. v. National Union Fire Ins. Co.*, 64 F.3d 1112, 1114 (7th Cir.1995) (quoting *Thomason v. Nachtrieb*, 888 F.2d 1202, 1204 (7th Cir.1989). When the plaintiff is the moving party, the motion should not be granted unless it appears beyond doubt that the non-moving party cannot prove facts sufficient to support his position. *See Continental X–Ray Corp.*, 1997 WL 102537, at *5–6. In ruling on a Rule 12(c) motion, this court must view the facts in a light most favorable to the non-moving party. *Flenner v. Sheahan*, 107 F.3d 459, 461 (7th Cir.1997). A judgment on the pleadings is proper when only questions of law, and not questions of fact, exist after the pleadings have been filed. *Indiana Ins. Co. v. Hydra Corp.*, 245 Ill.App.3d 926, 185 Ill.Dec. 775, 615 N.E.2d 70, 72 (1993), appeal denied, 152 Ill.2d 559, 190 Ill.Dec. 889, 622 N.E.2d 1206 (1993).

### A. Application of Collateral Estoppel

 To determine whether judgment on the pleadings is proper, this court must determine whether application of collateral estoppel is appropriate in this case. Under this doctrine, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits, based on a different cause of action, involving a party to the prior litigation." *Crowder v. Lash*, 687 F.2d 996, 1009 (7th Cir.1982); *see also Meyer v. Rigdon*, 36 F.3d 1375, 1379 (7th Cir.1994). Collateral estoppel is appropriate where: "(1) the party against whom the estoppel is asserted was a party to the prior adjudication; (2) the issues which form the basis of the estoppel were actually litigated and decided on the merits in the prior suit; (3) the resolution of the particular issues was necessary to the

court's judgment; and (4) those issues are identical to the issues raised in the subsequent suit." *County of Cook v. MidCon Corporation*, 773 F.2d 892, 898 (7th Cir. 1985).

Two prongs of this test are undisputed in the instant case: (1) Defendant was also the Defendant in the *American Fire* litigation; and (2) the "occurrence" issue was the central and only issue on which this court based its decision in *American Fire*. *See American Fire*, 54 F.Supp.2d at 849–50 ("Because this court has concluded that the damages alleged in the underlying KDB complaint were not the result of an "occurrence" and are not covered, or potentially covered, under the CGL policy issued by Plaintiff, there is no need to rule upon Plaintiff's other policy defenses.") Defendant argues, however, that prongs 2 and 4 enumerated above are not satisfied because the issues raised in the instant case are distinguishable from those involved in *American Fire*. Specifically, it argues that: (1) this case raises different issues regarding Plaintiffs' reservation of rights than were present in *American Fire;* and (2) the insurance policies at issue in this case are different from the policy issued by American Fire in that Central Mutual is an excess insurance carrier.

### 1. Reservation of Rights and Affirmative Defenses

Defendant first argues that the reservation of rights letter sent by All America on June 2, 1998, was inadequate because it failed to specifically set forth the "no occurrence" policy defense. Furthermore, Defendant contends that because the "no occurrence" policy defense was not raised in a reservation of rights letter until sixteen months after All America undertook the defense in the underlying case, Plaintiffs are now precluded from raising it according to the doctrines of waiver, estoppel, breach of duty of good faith and fair dealing, and laches. Thus, Defendant argues, there are different issues in the instant case than those present in *American Fire* precluding the application of collateral estoppel. In response to Defendant's affirmative defenses, Plaintiffs moved to strike.

■ Rule 12(f) provides that "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." F.R.Civ.P. 12(f). "A movant bears the burden of demonstrating that the challenged allegations are so unrelated to plaintiff's claim as to be devoid of merit, unworthy of consideration and unduly prejudicial." *Vakharia v. Little Company of Mary Hosp. & Health Care Ctr.*, 2 F.Supp.2d 1028 (N.D.Ill.1998).

■ Defendant first raises the affirmative defenses of waiver and estoppel. "[W]here an insurer believes that its policy does not provide coverage [in the underlying cause of action], the insurer must either defend under a reservation of rights or secure a declaratory judgment" regarding its responsibilities under the policy. *Royal Ins. Co. v. Process Design Assoc. Inc.*, 221 Ill.App.3d 966, 164 Ill.Dec. 290, 582 N.E.2d 1234, 1239 (1991) (quoting *Northbrook Property & Casualty Ins. Co. v. U.S. Fidelity & Guarantee Co.*, 150 Ill. App.3d 479, 103 Ill.Dec. 500, 501 N.E.2d 817 (1986)). Failure to promptly reserve its rights under the policy may result in waiver because the "insurer who wishes to reserve his or her rights under a policy must notify the insured 'without delay.'" *American States Ins. Co. v. National Cycle, Inc.*, 260 Ill.App.3d 299, 197 Ill.Dec. 833, 631 N.E.2d 1292, 1297 (1994) (quoting *Apex Mutual Ins. Co. v. Christner*, 99 Ill.App.2d 153, 240 N.E.2d 742, 751 (1968)). Under Illinois law, however, "an insurer is not required to assert all of its defenses to liability in a letter to its insured to avoid waiving those defenses." *Universal Fire & Casualty Ins. Co. v. Jabin*, 16 F.3d 1465, 1470 (7th Cir.1994) (quoting *Tobi Eng'g v. Nationwide Mutual Ins.*, 214 Ill.App.3d 692, 158 Ill.Dec. 366, 574 N.E.2d 160, 162 (1991)). Waiver must either be "an ex-

press or implied voluntary and intentional relinquishment of a known right." *Universal Fire*, 16 F.3d at 1470. This waiver will be implied only if the act constituting waiver is "clear, unequivocal, and decisive." *Universal Fire*, 16 F.3d at 1470. Here, All America's June 2 letter to Defendant expressly indicated that it "did not waive any of its rights under the policy."

Defendant argues that an exception to this general rule of waiver exists in the present case. As discussed in *Universal Fire*, in some circumstances, "the insurer must make specific reference to the policy defense which may ultimately be asserted or else waive that defense." *Universal Fire*, 16 F.3d at 1471. Defendant argues that All America's failure to specifically indicate its reservation of rights under the "no occurrence" provision of its policy until October 27, 1999, resulted in such waiver. However, as the court in *Universal Fire* explained, this specificity is required only in instances in which "the insurer reserves the right to raise certain specified defenses during the course of its representation of the insured that may cause a serious conflict of interest between insurer and insured." *Universal Fire*, 16 F.3d at 1471. Defendant has failed to plead facts to demonstrate such a serious conflict of interest. Furthermore, even if such facts were present, as discussed below, this court finds that the specificity provided by All America in its October 27 letter was sufficient to properly reserve its rights under the policy.

 Defendant further contends that because Plaintiffs failed to specifically delineate the "no occurrence" policy defense in its June 2 letter, they are now estopped from asserting this defense. Similar to the waiver doctrine, estoppel can act to prevent an insurer from asserting defenses for which it has not reserved its rights. *American States*, 197 Ill.Dec. 833, 631 N.E.2d at 1298. However, "unlike waiver, estoppel may be an involuntary relinquishment of rights and requires prejudicial reliance by the insured."

*American States*, 197 Ill.Dec. 833, 631 N.E.2d at 1298. Defendant here alleges that it suffered prejudice in the form of surrendering control of its defense to and relying upon defense counsel provided by Plaintiffs due to Plaintiffs' failure to assert the "no occurrence" defense until October 27, 1999. When confronted with this same argument, the court in *American States* found that the "insured has the burden of establishing prejudicial reliance 'by clear, concise, and unequivocal evidence.'" *American States*, 197 Ill.Dec. 833, 631 N.E.2d at 1299 (quoting *Old Mutual Casualty Co. v. Clark*, 53 Ill.App.3d 274, 11 Ill.Dec. 151, 368 N.E.2d 702, 705 (1977)).

A similar situation regarding reservation of rights letters was presented in *Northwestern National Ins. Co. v. Corley*, 503 F.2d 224 (7th Cir.1974). In *Northwestern*, the plaintiff insurance company brought a declaratory judgment action for interpretation of potential coverage under a comprehensive general liability policy issued to Leakakos Construction Company. Northwestern alleged that it sent a reservation of rights letter on December 16, 1970, which stated it was "accepting untimely notice of the litigation 'subject to full reservation of rights under the policy.'" *Northwestern*, 503 F.2d at 227. Leakakos alleged that the only reservation of rights letter it received was seven months later, by which time Northwestern's attorneys had already begun work on the defense. This second letter specifically delineated the policy defenses which were the source of Northwestern's reservation of rights. The lower court granted summary judgment in favor of Leakakos finding that Northwestern entered into the defense without a reservation of rights and was estopped from later asserting a reservation of rights. On appeal by Northwestern, Leakakos argued that even if Northwestern had sent the December letter, the letter "failed to use language adequate to reserve Northwestern's rights under the policy." *Northwestern*, 503 F.2d at 232. However, the appellate court held that the

insurance company did not need to specifically set forth all of its defenses in an initial reservation of rights letter, stating:

> We do not entertain the opinion that the insured is not entitled to be more specifically informed of the exact reasons for a possible denial of coverage. On the other hand, we do not think that an insured who is given unequivocal notice, such as was given here, can sit quietly by and engage in a sandbagging operation to secure coverage for which he has paid no premium. *Northwestern,* 503 F.2d at 233.

Like All America, Northwestern issued a more specific reservation of rights letter several months after an initial broad reservation of rights and was not deemed to have waived its policy defenses, nor was it estopped from asserting them.

This court also finds *Essex Ins. Co. v. Stage 2, Inc.,* 14 F.3d 1178 (7th Cir.1994) instructive. In *Essex,* two patrons of the Stage 2 nightclub assaulted another patron, Lucht. Lucht sued Stage 2 for breach of its duty of care. Stage 2 sought a defense from its insurance carrier, Essex. In response, Essex hired a law firm, Sorling, to participate in the Stage 2 defense along with Stage 2's general counsel, Gifford. Although no reservation of rights letter was issued by Essex, the insurer had previously sent a reservation of rights letter which specifically delineated the relevant exclusionary provisions of the policy in an earlier case involving a similar claim against Stage 2. Seventeen months after Lucht filed his suit and after making several unsuccessful attempts to settle the case, Essex sought declaratory judgment that it had no duty to defend Stage 2. In this action, Stage 2 raised the affirmative defenses of waiver and estoppel, both of which were rejected. As concerned the estoppel claim, the court stated:

> We are satisfied that Stage 2 knew from the inception of Lucht's suit that its insurance contract with Essex would not cover any liability arising from the suit.... Therefore, they cannot now claim that Essex's conduct misled them or that they reasonably relied to their detriment on the absence of a written reservation of rights letter. *Essex,* 14 F.3d at 1182.

As discussed above, Defendant received notification that All America was reserving all of its rights under the policy on June 2, 1998. Furthermore, Defendant cannot argue that they were unaware that the "no occurrence" policy defense could be raised. Attached as Exhibit 3 to Defendant's answer was the letter from American Fire which indicated that they were raising the "no occurrence" policy defense with regard to the same litigation for which All America denied coverage. As indicated above, the "no occurrence" policy provision in the American Fire policy was identical to that contained in the All America policy.

 Finally, Defendant argues that the defenses of laches and breach of good faith and fair dealing preclude Plaintiffs' assertion of the "no occurrence" policy defense. Laches applies "when a party's failure to timely assert a right has caused prejudice to an adverse party." *Van Milligan v. Bd. Of Fire and Police Comm'rs Of the Village of Glenview,* 158 Ill.2d 85, 196 Ill.Dec. 665, 630 N.E.2d 830, 833 (1994). As discussed above, Defendant is unable to establish prejudice by the delay in receiving the more detailed reservation of rights letter. Likewise, this court does not find that Defendant has established a breach of the duty of good faith and fair dealing. Such a finding requires "vexatious, unreasonable, outrageous conduct" on the part of the insurer. *Emerson v. Am. Bankers Ins. Co. of Florida,* 223 Ill. App.3d 929, 166 Ill.Dec. 293, 585 N.E.2d 1315, 1321 (1992). Defendant has failed to state any facts which could give rise to a finding of bad faith sufficient to meet this standard.[1]

---

1. "Examples of conduct found to support a finding of bad faith include: failure to adequately investigate a claim or denial of the claim without adequate supporting evidence;

## 2. Excess Insurance Policy

■ Defendant further argues that collateral estoppel is inappropriate because it holds an Excess Insurance policy with Central Mutual rather than a Commercial General Liability Insurance policy as was present in *American Fire*. However, this argument is unconvincing. This court in *American Fire* concluded that the underlying complaint made by KDB did not allege property damage which could be considered an "occurrence" as defined by the policy. This holding is equally applicable to Central Mutual, even as an excess insurance carrier, because the definition of "occurrence" provided by Central Mutual is nearly identical to the definition provided by American Fire.

■ Furthermore, the affirmative defenses pled by Defendant are equally ineffective as applied to Central Mutual. An excess insurer does not have obligations under the policy until applicable primary insurance has been exhausted. *American States Ins. Co. v. Liberty Mut. Ins. Co.*, 291 Ill.App.3d 336, 225 Ill.Dec. 342, 683 N.E.2d 510 (1997). "It is the duty to defend which gives rise to the duty to reserve rights when defense of a claim is undertaken, and without such a duty, an insurer has no obligation to issue a reservation of rights letter." *International Ins. Co. v. Sargent & Lundy*, 242 Ill.App.3d 614, 182 Ill.Dec. 308, 609 N.E.2d 842, 855 (1993). While Central Mutual did not join in All America's reservation of rights letter dated June 2, 1998, it did join in the second letter sent on October 27, 1999. Because Central Mutual's duty to defend did not arise at the same time as All America, the affirmative defenses raised by Defendant are no more applicable to Central Mutual than they are to All America.

failure to evaluate a claim objectively; interpreting policy provisions in an unreasonable manner; unreasonably low settlement offers; reliance on misrepresentations in the insurance application which are very minor or where the insurer's agent knowingly filled out

## B. Application of Offensive Collateral Estoppel

■ Finally, additional factors must be considered because Plaintiffs seek to use collateral estoppel offensively. Trial courts are granted "broad discretion" to determine when offensive collateral estoppel should be employed. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 331, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). Among the considerations to be weighed by this court is the prevention of what has been termed a "wait and see plaintiff." Because "potential plaintiffs will have everything to gain and nothing to lose by not intervening in the first action" and the interests of judicial economy will not be served, the Supreme Court warned against the use of offensive collateral estoppel in these situations. *Parklane*, 439 U.S. at 330, 99 S.Ct. 645. Defendant argues that Plaintiffs' failure to join in the *American Fire* litigation precludes the use of collateral estoppel. This court declines to find that Plaintiffs adopted such a wait and see attitude toward the *American Fire* litigation which constituted merely judgment on the pleadings rather than a full trial on the merits. "Where a plaintiff has not needlessly increased the total amount of litigation by adopting a 'wait and see' attitude, the concern for judicial economy animating the *Parklane Hosiery* "easy joinder" limitation has not been implicated." *Ross–Berger Companies, Inc. v. Equitable Life Assurance Society of the United States*, 872 F.2d 1331, 1337 n. 2 (7th Cir.1989). Based upon the type of disposition in the American Fire litigation and the absence of facts indicating a wait and see attitude on the part of Plaintiffs, this court finds in its discretion that collateral estoppel is appropriate.

IT IS THEREFORE ORDERED THAT:

the application falsely; and abusive or coercive practices designed to compel compromise of a claim." *Emerson*, 166 Ill.Dec. 293, 585 N.E.2d at 1320–21. No such conduct was alleged in this case.

(1) Plaintiffs' Motion for Judgment on the Pleadings (# 6) is GRANTED. Judgment is entered in favor of Plaintiffs and against Defendant with respect to Counts II and V of the Complaint.

(2) Plaintiffs' Motion to Strike Affirmative Defenses (# 8) is GRANTED.