# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|                                   |     |                             |
|-----------------------------------|-----|-----------------------------|
| GALLUP, INC.,                     | )   |                             |
|                                   | )   |                             |
| Plaintiff,                        | )   |                             |
|                                   | )   | C.A. No. N14C-02-136 FWW    |
| v.                                | )   |                             |
|                                   | )   |                             |
| GREENWICH INSURANCE               | )   |                             |
| COMPANY,                          | )   |                             |
|                                   | )   |                             |
| Defendant.                        | )   |                             |

Submitted: October 10, 2016
Decided: January 30, 2017

Upon Plaintiff's Motion for Summary Judgment on Counts V and VI of
Defendant's Counterclaims:
**DENIED**.

## MEMORANDUM OPINION

Brian M. Rostocki, Esquire, Diana Rabeh, Esquire, Reed Smith LLP, 1201 Market Street, Suite 1500, Wilmington, Delaware 19801; Carolyn H. Rosenberg, Esquire, Mark S. Hersh, Esquire, Reed Smith LLP, 10 South Wacker Drive, 40th Floor, Chicago, Illinois 60606; Attorneys for Plaintiff.

Carmella P. Keener, Esquire, Rosenthal, Monhait & Goddess, P.A., 919 North Market Street, Suite 1401, Wilmington, Delaware 19801; Jonathan A. Constine, Esquire, Stacey L. McGraw, Esquire, Brandon D. Almond, Esquire, Troutman Sanders LLP, 401 9th Street, N.W., Suite 1000, Washington, D.C. 20004-2134; Attorneys for Defendant.

**WHARTON, J.**

# I.    INTRODUCTION

In 2012, the United States Department of Justice initiated a lawsuit against Gallup, Inc. ("Gallup") alleging that Gallup defrauded the federal government. Gallup and the government eventually settled the litigation, without Gallup admitting any wrongdoing. Greenwich Insurance Company ("Greenwich"), Gallup's insurer, paid a portion of Gallup's defense costs associated with that litigation. However, Greenwich has refused to cover Gallup's settlement payment and other defense costs for various reasons under the insurance policy ("Policy").

In this Motion, Gallup seeks summary judgment as to two of Greenwich's counterclaims. Gallup contends that Greenwich cannot bring those claims because the fraud exclusion in the Policy does not permit Greenwich to bring a coverage action against Gallup to determine whether Gallup defrauded the federal government. Greenwich argues that it need not pay Gallup's settlement payment and defense costs because the fraud exclusion within the Policy removes coverage. Although Gallup settled the underlying litigation without admitting any liability, Greenwich argues that the Policy's fraud exclusion allows Greenwich to bring a coverage action in order to prove that Gallup actually defrauded the government. In doing so, Greenwich seeks to trigger the Policy's fraud exclusion, thereby voiding its responsibility to pay Gallup.

Applying Superior Court Civil Rule 56(c) to Gallup's Motion for Summary Judgment, the Court finds that the Policy's fraud exclusion unambiguously permits Greenwich to pursue a coverage action against Gallup in order to determine Greenwich's financial responsibilities to Gallup under the Policy. Furthermore, the Court finds that Greenwich is not precluded from pursuing a coverage action against Gallup because Greenwich reserved its right to do so in letters it sent to Gallup. Finally, Gallup's claim that Greenwich was privy to confidential information in the underlying litigation is insufficient to bar Greenwich's coverage action. Therefore, Gallup's Motion for Summary Judgment with respect to Counts V and VI of Greenwich's counterclaims is **DENIED**.

## II.    FACTUAL AND PROCEDURAL CONTEXT

Greenwich issued the Policy to Gallup covering Gallup from January 1, 2010 to January 1, 2011.[1] The Policy consists of three separate coverage categories, one of which is the Management Liability and Company Reimbursement category.[2] The Policy provides for a $15 million maximum aggregate limit of liability under all three categories.[3]

In October 2009, Gallup was sued by a former employee in a *qui tam* action, and in November 2012, the United States Department of Justice intervened in the

---

[1] Jt. Facts., D.I. 22, at ¶ 1.
[2] *See* D.I. 2, at Ex. 1.
[3] *See id.*

lawsuit.[4] The Department of Justice's complaint alleged that Gallup defrauded the federal government when Gallup allegedly overbilled eight federal agencies for polling services that Gallup rendered.[5] On July 12, 2013, however, Gallup and the government reached a settlement.[6] Pursuant to the settlement agreement, Gallup agreed to pay $10.58 million to the government.[7] The settlement agreement also provided that Gallup did not make any admissions of liability.[8]

Given the costs associated with the *qui tam* litigation, Gallup sought coverage under the Management Liability and Company Reimbursement category of the Policy. Specifically, Gallup sought to be reimbursed by Greenwich for Gallup's settlement payment and defense expenses.[9] To date, Greenwich has reimbursed Gallup approximately $8.7 million in connection with the underlying litigation, "leaving approximately $6.3 million remaining on the $15 million limits of the Policy."[10] However, Greenwich has refused to pay the settlement payment and other defense expenses associated with the underlying litigation.

On February 14, 2014, Gallup filed a Complaint against Greenwich requesting declaratory relief that the settlement payment and defense expenses be

---

[4] D.I. 22, at ¶¶ 6–7.
[5] *See id.* at ¶ 6.
[6] *See id.* at ¶ 13.
[7] *See id.* at ¶ 14.
[8] *See id.*
[9] *See id.* at ¶ 16–18. Of any remaining defense costs allegedly incurred in connection with the underlying litigation, the parties agree that the amount in dispute is less than $600,000. *See id.* at ¶17.
[10] *See id.* at ¶ 18.

covered up to the Policy's limits.[11] Furthermore, Gallup's Complaint contends that Greenwich breached its contract with Gallup by refusing to pay Gallup up to the aggregate amount of the Policy.[12]

On April 17, 2014, Greenwich denied the allegations in the Complaint and pleaded thirty-six affirmative defenses and four counterclaims.[13] On January 20, 2016, Greenwich amended its Answer to add two additional counterclaims.[14] Specifically, under Count V, Greenwich seeks a declaratory judgment that coverage for the underlying litigation, including the settlement payment, is barred by the Fraud and Improper Profit Exclusion ("Exclusion").[15] The Exclusion provides:

> The Insurer shall not be liable to make any payment for Loss, and shall have no duty to defend or pay Defense Expenses, in connection with any Claim made against an Insured:
>
> (A) brought about or contributed to in fact by any:
>
> > (1) intentionally dishonest, fraudulent or criminal act or omission or any willful violation of any statute, rule or law; or
> >
> > (2) profit or remunerations gained by any Insured to which such Insured is not legally entitled;

---

[11] *See* Pl.'s Compl., D.I. 1, at ¶¶ 36–45.
[12] *See id.*
[13] *See* Def.'s Answer & Countercls., D.I. 10.
[14] *See* Def.'s Amended Answer & Countercls., D.I. 94.
[15] *See id.*

as determined by a final adjudication in the underlying action or in *a separate action or proceeding*.[16]

Under Count VI, Greenwich seeks reimbursement of all defense costs it paid on behalf of Gallup in the underlying litigation and related investigations pursuant to the Exclusion.[17] The Exclusion provides that "[e]ach Insured agrees that, if the Insurer has no liability to an Insured for Loss as a result of a Claim by reason of this EXCLUSION (A), such Insured will repay Insurer upon demand all Defense Expenses paid on behalf of such Insured in connection with such Claim."[18] Greenwich asserts that it is entitled to $3,229,344.88 plus pre-judgment interest.[19]

On March 29, 2016, Gallup moved for summary judgment with respect to Count V and Count VI of Greenwich's counterclaims.[20] Gallup contends that the Exclusion does not permit Greenwich to bring a coverage action against it in order to determine whether Gallup defrauded the federal government.[21]

On May 16, 2016, Greenwich answered, arguing that the unambiguous language of the Exclusion permits Greenwich to bring a coverage action against Gallup.[22] Gallup replied on June 2, 2016,[23] and the parties appeared before the Court for oral argument on October 10, 2016.

---

[16] *See* D.I. 1, at Ex. 1 (emphasis added).
[17] *See* D.I. 94.
[18] *See* D.I. 1, at Ex. 1 (emphasis in original).
[19] *See* D.I. 94.
[20] *See* D.I. 103.
[21] *Id.*
[22] *See* D.I. 109.

## III.  THE PARTIES' CONTENTIONS

In Gallup's Motion for Summary Judgment, Gallup raises three arguments. First, Greenwich cannot trigger the Exclusion by initiating a coverage action against Gallup.  Second, even if Greenwich could bring a coverage action under the Exclusion, Greenwich is precluded from doing so because Greenwich failed to diligently pursue its claim against Gallup.  Third, Greenwich may not pursue a coverage action against Gallup because Greenwich received privileged information from Gallup about the underlying litigation.

**(A)   Can Greenwich Trigger the Exclusion by Initiating a Coverage Action Against Gallup?**

The Exclusion applies only if the insured's fraud or other prohibited conduct is "determined by a final adjudication in the underlying action or in a separate action or proceeding."[24]   While Greenwich argues that "a separate action or proceeding" includes a coverage action, Gallup argues that basic principles of contract interpretation do not lead to such a result.[25]   Specifically, Gallup first argues that exclusionary provisions within insurance policies must be narrowly construed, as this Court has previously stated.[26]   Gallup argues that a narrow

---

[23] *See* D.I. 110.
[24] *See* D.I. 1, at Ex. 1; Pl.'s Opening Br., D.I. 103, at 9.
[25] D.I. 103, at 10.
[26] *Id.*

reading of the Exclusion would not permit Greenwich to initiate a coverage action against the party it insures.[27]

Second, Gallup asserts that "all policy provisions must be construed in light of the reasonable expectations of the insured, if the language permits."[28] Given this interpretive principle, Gallup asserts that no insured would reasonably expect that the phrase "a separate action or proceeding" includes a coverage action "in which its own insurer adopts the allegations made against the insured and seeks to prove them itself."[29]

Third, Gallup argues that, if Greenwich wanted "a separate action or proceeding" to include a coverage action, Greenwich should have explicitly included such language in the Exclusion.[30] Because Greenwich failed to explicitly define what constitutes "a separate action or proceeding," Gallup argues that Greenwich "should not get the benefit of any doubt about its meaning."[31]

Fourth, the Exclusion is triggered by a final adjudication in "*a* separate action or proceeding."[32] Gallup asserts that Greenwich's use of "a," as opposed to

---

[27] *Id.*
[28] *Id.* at 11.
[29] *Id.*
[30] *Id.* at 12.
[31] *Id.*
[32] *Id.* at 13 (emphasis added).

8

"any," does not permit a broad construction because "a" is not synonymous with "any."[33]

Fifth, and finally, Gallup argues that Greenwich's interpretation of the Exclusion undermines the overall purpose of an insurance contract.[34] Indeed, Gallup states that "[w]hile it is not uncommon for an insurer to seek a judicial declaration of no coverage, Greenwich is doing more than that: it is adopting as its own the same allegations against Gallup for which it had agreed to cover Gallup under the Policy."[35] Gallup contends that allowing such an interpretation neglects its reasonable expectations as an insured entity.

In response, Greenwich states that the Exclusion unambiguously permits Greenwich to bring a coverage action against Gallup.[36] Greenwich notes that insurance policies must be interpreted in accordance with their plain and ordinary meaning.[37] As such, Greenwich contends that a coverage action is an "action or proceeding."[38] Also, a coverage action is a "separate" proceeding from "the underlying action" because a coverage action "is distinct from and independent of the underlying action."[39]

---

[33] *Id.*
[34] *Id.* at 6, 14–15.
[35] *Id.* at 6.
[36] Def.'s Answering Br., D.I. 109, at 6.
[37] *Id.* at 5–6.
[38] *Id.* at 7.
[39] *Id.*

9

Greenwich contends that the above conclusion is further supported by the fact that the phrase "separate action or proceeding" is not limited in any way.[40] Contrary to Gallup's argument, the phrase is preceded by the word "a," which is a synonym for "any."[41] As a result, the Exclusion permits an adjudication in any "separate action or proceeding," without limitation to any particular forum or type of action.[42]

In addition, Greenwich argues that Gallup's non-textual arguments are irrelevant because the Exclusion's language is unambiguous.[43] According to Greenwich, other considerations, such as extrinsic evidence, cannot be used to interpret a contract when the contract's language is clear.[44]

**(B)    Did Greenwich Fail to Promptly and Diligently Pursue Its Claim Under the Exclusion?**

Gallup argues that every insurer has a duty to promptly and fully investigate claims against its insured, and a failure to do so is a breach of the implied covenant of good faith and fair dealing.[45] In this case, Gallup contends that Greenwich had five years to evaluate its coverage under the Exclusion, but "Greenwich nevertheless decided not to investigate the allegations of fraud against Gallup until

---

[40] *Id.* at 7–8.
[41] *Id.*
[42] *Id.*
[43] *Id.* at 13–14.
[44] *Id.*
[45] D.I. 103, at 24.

10

it had lost on its other coverage defenses."[46]  As a result, Greenwich is either estopped from pursuing or has waived its right to pursue this coverage action because Greenwich did not diligently pursue its claim under the Exclusion.[47] Similarly, Gallup argues that Greenwich is precluded from pursuing a coverage action because Greenwich's "reservation of rights letters did not reserve any right to seek a final adjudication of fraud against Gallup in a coverage action."[48]

In response, Greenwich contends that it expressly reserved its right to deny coverage under the Exclusion.  In particular, once Greenwich received notice of the government's investigation of Gallup, Greenwich wrote a letter identifying a number of Policy provisions that may limit or bar coverage, including the Exclusion.[49]  Greenwich thereafter issued two additional coverage letters, both of which reaffirmed the rights stated in the initial letter.[50]  Therefore, Greenwich argues that it properly reserved its right to rely on the Exclusion.[51]

Greenwich also notes that the Exclusion was properly raised as an affirmative defense when Gallup filed the lawsuit.[52]  Greenwich asserts that it promptly notified Gallup that it would rely on the Exclusion.[53]

---

[46] *Id.* at 31.
[47] *Id.* at 26–27.
[48] *Id.* at 24.
[49] D.I. 109, at 22–24.
[50] *Id.*
[51] *Id.*
[52] *Id.* at 24.
[53] *Id.*

11

**(C)     Did Greenwich Receive Privileged Information from Gallup About the Underlying Litigation so as to Preclude It from Bringing a Coverage Action?**

Gallup argues that, when an "insured has shared confidential and privileged strategic information about a significant claim with its insurer," the insurer should not be allowed to use that information against the insured in a subsequent lawsuit.[54] Here, Gallup contends that Greenwich has obtained confidential information regarding the merits of the government's allegations against Gallup in the underlying litigation, and it should not be able to use this information in a separate action to avoid coverage.[55]

Greenwich argues that Gallup has not cited "one single case in support" of its argument.[56] Furthermore, Greenwich asserts that Gallup has not identified "a single item of privileged information that it provided Greenwich, much less explained how that privileged information would somehow provide an unfair advantage to Greenwich."[57] Thus, Greenwich contends that Gallup has failed to show that it is entitled to summary judgment on this basis.

## IV.     STANDARD OF REVIEW

Superior Court Civil Rule 56(c) provides that summary judgment is appropriate when there is "no genuine issue as to any material fact" and "the

---

[54] D.I. 103, at 33.
[55] *Id.*
[56] D.I. 109, at 34.
[57] *Id.* at 35.

moving party is entitled to a judgment as a matter of law." When considering a motion for summary judgment, the Court's function is to examine the record to determine whether genuine issues of material fact exist "but not to decide such issues."[58] The moving party bears the initial burden of demonstrating that the undisputed facts support his claims or defenses.[59] If the moving party meets its burden, then the burden shifts to the non-moving party to demonstrate that there are material issues of fact to be resolved by the ultimate fact-finder.[60]

Summary judgment will be granted if, after viewing the record in the light most favorable to the non-moving party, no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.[61] If the record reveals that material facts are in dispute, or if the factual record has not been developed thoroughly enough to allow the Court to apply the law to the factual record, then summary judgment is inappropriate.[62]

## V.    DISCUSSION

**(A)    The Exclusion Unambiguously Permits Greenwich To Pursue a Coverage Action Against Gallup.**

In relevant part, the Exclusion contains the following provisions:

---

[58] *Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 99 (Del. 1992).
[59] *Moore v. Sizemore*, 405 A.2d 679, 681 (Del. 1979).
[60] *Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995).
[61] *Merrill*, 606 A.2d at 99–100.
[62] *See Cook v. City of Harrington*, 1990 WL 35244, at *3 (Del. Super. Feb. 22, 1990) ("Summary judgment will not be granted under any circumstances when the record indicates . . . that it is desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances.").

The Insurer shall not be liable to make any payment for Loss, and shall have no duty to defend or pay Defense Expenses, in connection with any Claim made against an Insured:

(A) brought about or contributed to in fact by any:

> (1) intentionally dishonest, fraudulent or criminal act or omission or any willful violation of any statute, rule or law; or

> (2) profit or remunerations gained by any Insured to which such Insured is not legally entitled;

as determined by a final adjudication in the underlying action or in *a separate action or proceeding.*[63]

In this Motion, the Court must determine whether "a separate action or proceeding" includes a coverage action. The Court previously determined that it need not decide whether Delaware or Nebraska law applies because there is no conflict of law with respect to contract interpretation between these two jurisdictions.[64] Accordingly, the Court will apply general principles of contract interpretation to ascertain the meaning of the Exclusion.[65]

In both Delaware and Nebraska, an insurance policy should be given its ordinary and usual meaning when the provisions contained therein are clear and

---

[63] *See* D.I. 1, at Ex. 1 (emphasis in original).
[64] *Gallup, Inc. v. Greenwich Ins. Co.*, 2015 WL 1201518, at *9 (Del. Super. Feb. 25, 2015).
[65] *Id.* (citing *Eon Labs Mfg., Inc. v. Reliance Ins. Co.*, 756 A.2d 889, 892 (Del. 2000); *Sun-Times Media Grp.*, 2007 WL 1811265, at *9 (Del. Super. June 20, 2007)).

14

unambiguous.[66]    When the language of an insurance policy is clear and unambiguous, "a party will be bound by its plain meaning because creating an ambiguity where none exists could, in effect, create a new contract with rights, liabilities and duties to which the parties had not assented."[67]

Moreover, courts in these jurisdictions have found that an insurance policy is not "rendered ambiguous simply because the parties do not agree upon its proper construction."[68]    An insurance policy is ambiguous only "if a word, phrase, or provision in the instrument has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings."[69]    "The fact that parties to a document have or suggest opposing interpretations of the document does not necessarily, or by itself, compel the conclusion that the document is ambiguous."[70]

Construing the Exclusion in accordance with its ordinary and usual meaning, the Court finds that the phrase "a separate action or proceeding" necessarily includes a coverage action.[71]    A coverage action is an "action or proceeding."

---

[66] *See Rhone-Poulenc Basic Chems. Co. v. American Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992) (citing *Johnston v. Tally Ho, Inc.*, 303 A.2d 677, 679 (Del. Super. 1973)); *American Family Mut. Ins. Co. v. Hadley*, 648 N.W.2d 769, 775 (Neb. 2002).

[67] *Rhone-Poulenc*, 616 A.2d at 1195–96 (quoting *Hallowell v. State Farm Mut. Auto. Ins. Co.*, 443 A.2d 925, 926 (Del. 1982)).

[68] *Id.* at 1196.

[69] *Moller v. State Farm Mut. Auto. Ins. Co.*, 566 N.W.2d 382, 382 (Neb. 1997) (citing *Daehnke v. Nebraska Dept. of Soc. Serv.*, 557 N.W.2d 17 (Neb. 1996); *Krzycki v. Genoa Nat. Bank*, 496 N.W.2d 916 (Neb. 1993); *Knox v. Cook*, 446 N.W.2d 1 (Neb. 1989)); *Rhone-Poulenc*, 616 A.2d at 1196 (citing *Hallowell*, 443 A.2d at 926).

[70] *Moller*, 566 N.W.2d at 726 (quoting *Knox*, 446 N.W.2d at 4).

[71] Because the Court finds that the Exclusion is unambiguous, the Court will not consider the multitude of arguments in Gallup's brief regarding policy considerations and extrinsic evidence.

Furthermore, a coverage action is "separate" from "the underlying action," since a coverage action is independent of the underlying action. In this case, a coverage action by Greenwich against Gallup is entirely separate from Gallup's litigation with the federal government. Finally, the Exclusion does not place any restrictions on who may bring "a separate action or proceeding." Thus, Gallup's argument that the Exclusion prohibits an insurer from bringing a coverage action against its insured is without merit.

Gallup argues that such an interpretation is incorrect because exclusionary provisions must be narrowly construed in the insured's favor.[72] In Gallup's view, the phrase "a separate action or proceeding" is limited to "criminal and civil cases [that] arise from the same set of facts and run parallel to each other."[73] Gallup contends that the intent of the phrase is to allow a final adjudication of prohibited conduct in one case to trigger the Exclusion in the "parallel" case.[74] For example, if a final adjudication in a criminal case renders the insured guilty of committing fraudulent behavior, then the Exclusion would be triggered in the parallel civil case.[75] However, a coverage action initiated by an insurer, Gallup argues, is not "parallel to the one for which coverage is sought."[76]

---

[72] D.I. 103, at 11.
[73] *Id.* at 10–11.
[74] *Id.*
[75] *Id.* at 11.
[76] *Id.* at 10.

16

The Court finds that Gallup's narrow interpretation of the Exclusion is unpersuasive. Indeed, the language set forth in the Exclusion is clear, and there is nothing within it that would suggest that the phrase "a separate action or proceeding" is solely limited to "parallel" actions.[77]

Gallup cites to several cases where courts "have rejected similar efforts by insurers to trigger fraud exclusions in their policies in a coverage action."[78] However, as Gallup readily admits, the policy language at issue in the cases it cites is significantly different from the language present here.[79] Given that the courts' decisions in those cases were driven by the specific policy language in the policies at issue, the Court finds them distinguishable.[80]

---

[77] Similarly, Gallup argues that all policy provisions must be construed in light of the reasonable expectations of the insured, so long as the language permits. *See State Farm Mut. Auto Ins. Co.*, 443 A.2d 925, 927 (Del. 1982). In Gallup's view, no insured would reasonably expect that the Exclusion "includes a coverage action in which its own insurer adopts the allegations made against the insured and seeks to prove them itself." D.I. 103, at 11. Again, the Court finds Gallup's argument to be unpersuasive. First, the interpretive principle set forth by Gallup only applies "if the language permits," and here, the Exclusion's language does not permit such a construction because it is unambiguous. Second, an insured, in the Court's view, would reasonably expect an insurer to take steps to avoid paying for the insured's underlying litigation costs when it has reason to believe that the underlying litigation resulted from the insured's fraudulent conduct.

[78] D.I. 103, at 7. *See, e.g., St. Paul Mercury Ins. Co. v. Foster*, 268 F. Supp. 2d 1035, 1045–46 (C.D. Ill. 2003); *Mt. Hawley Ins. co. v. Fed. Sav. & Loan Ins. Corp.*, 695 F. Supp. 469, 475 (C.D. Cal. 1987); *Nat'l Union Fire Ins. v. Seafirst Corp.*, 662 F. Supp. 36, 38–39 (W.D. Wash. 1986); *PepsiCo, Inc. v. Cont'l Cas. Co.*, 640 F. Supp. 656, 660 (S.D.N.Y. 1986).

[79] D.I. 103, at 7.

[80] For example, in *Atlantic Permanent Fed. Sav. & Loan Ass'n v. American Cas. Co.*, 670 F. Supp. 168 (E.D. Va. 1986), *aff'd*, 839 F.2d 212 (4th Cir. 1988), the court had to determine whether the phrase "unless a judgment or other final adjudication thereof" in an exclusionary provision permitted the insurer to bring a coverage action against the insured. The court ultimately held that the insurer could not bring a coverage action based upon the court's interpretation of the word "thereof" in the exclusion. *See id.* at 172. *See also PepsiCo, Inc.*, 640

**(B)  Greenwich Reserved Its Right To Pursue a Coverage Action Under the Exclusion In Its Reservation of Rights Letters to Plaintiff.**

Gallup argues that Greenwich is either estopped from pursuing or has waived its right to pursue a coverage action because Greenwich "waited too long" to rely on the Exclusion.[81]  Additionally, Gallup claims that Greenwich's reservation of rights letters did not inform Gallup that the Exclusion permitted Greenwich to bring a coverage action against Gallup.

Generally, courts have established that an insurer's reservation of rights letter to an insured must clearly communicate all of the insurer's rights to contest the policy's applicability, including policy exclusions.[82]  Courts have also established that an insurer must promptly provide its reservation of rights letter to an insured.[83]  If an insurer fails to abide by these standards, then the doctrines of waiver and estoppel may prevent an insurer from relying on policy defenses.[84]

---

F. Supp. at 659–60 (interpreting whether the phrase "unless a judgment or other final adjudication thereof" in an exclusionary provision permitted the insurer to pursue a separate coverage action against its insured); *Nat'l Union Fire Ins.*, 662 F. Supp. at 38–39 (same).

[81] D.I. 103, at 30.

[82] *See, e.g., Western Heritage Ins. Co. v. Love*, 24 F. Supp. 3d 866, 877–878 (W.D. Mo. 2014); *Harleysville Lake States Ins. Co. v. Granite Ridge Builders, Inc.*, 2008 WL 4935974, at *5–6 (N.D. Ind. Nov. 17, 2008); *Canal Ins. Co. v. Flores*, 524 F. Supp. 2d 828, 834 (W.D. Tex. 2007); *All Am. Ins. Co. v. Broeren Russo Constr., Inc.*, 112 F. Supp. 2d 723, 729–730 (C.D. Ill. 2000). *See generally* 14 Couch on Ins. § 202:47: Sufficiency of Reservation of Rights (3d ed.).

[83] *See, e.g., Western Heritage Ins. Co.*, 24 F. Supp. 3d at 878; *Greenwich Ins. Co. v. BBU Servs., Inc.*, 2013 WL 2430787, at *1 (W.D. Pa. June 4, 2013); *All Am. Ins. Co.*, 112 F. Supp. 2d at 729 (citing *Am. States Ins. Co. v. Nat'l Cycle, Inc.*, 631 N.E.2d 1292, 1297 (Ill. App. Ct. 1994)). *See generally* 14 Couch on Ins. § 202:46: Timeliness (3d ed.).

[84] *See, e.g., Nat'l Surety Corp. v. Dustex Corp.*, 2015 WL 1057506, at *10 (N.D. Iowa Mar. 10, 2015); *Breci v. St. Paul Ins. Co.*, 288 Neb. 626, 641–42 (2014); *First United Bank of Bellevue v. First Am. Title Ins. Co.*, 242 Neb. 640, 647–48 (1993). *See also* 14 Couch on Ins. §§ 202:46–47.

18

After reviewing the record, the Court finds that Greenwich clearly and timely reserved its right to pursue a coverage action against Gallup. After receiving notice of the federal government's investigation of Gallup, Greenwich wrote to Gallup on August 4, 2010.[85] In this letter, Greenwich specifically detailed the Policy provisions that "may limit or bar coverage," including the Exclusion.[86] Greenwich set forth the Exclusion's unambiguous language in this letter and reserved its right to deny coverage under this provision.[87] In two subsequent letters sent to Gallup, Greenwich again set forth the Exclusion's language in full.[88] Greenwich also stated in these two letters that it "reserves its rights to deny coverage for Loss to the extent it is finally determined in the underlying action or in a separate action or proceeding" that Gallup's conduct was fraudulent.[89] Given that Greenwich promptly and clearly notified Gallup in multiple letters of its right to deny coverage under the Exclusion, it cannot be said that Greenwich waived its right to pursue a coverage action against Gallup.[90]

**(C)    Greenwich Is Not Precluded from Pursuing a Coverage Action Against Gallup Merely Because Greenwich May Have Received Confidential Information from Gallup.**

---

[85] D.I. 103, at Ex. C.

[86] *Id.*

[87] *Id.*

[88] *Id.* at Exs. A, B.

[89] *Id.*

[90] Also, the fact that Greenwich did not initially raise the Exclusion as one of its counterclaims is of no moment because one of Greenwich's affirmative defenses is the Exclusion. *See* D.I. 10, at 17. Greenwich has maintained that the Exclusion would be a basis to deny coverage since this litigation arose.

19

Gallup argues that Greenwich should not be able to bring a coverage action against it because Greenwich received confidential information from Gallup regarding the underlying litigation. While it is possible that Greenwich cannot use certain information that it received from Gallup in the coverage action, Gallup has not cited to one source of authority that suggests Greenwich is altogether precluded from bringing a coverage action on this basis. As a result, Gallup's argument is unpersuasive.

## VI. CONCLUSION

The Court finds that the Exclusion unambiguously permits Greenwich to pursue a coverage action against Gallup. In addition, the Court finds that Greenwich properly reserved its right to pursue a coverage action against Gallup in the letters Greenwich sent to Gallup. Further, hypothetical privilege concerns are insufficient to bar a coverage action. Accordingly, Gallup's Motion for Summary Judgment with respect to Counts V and VI of Greenwich's counterclaims is **DENIED**.


**IT IS SO ORDERED.**

_____
Ferris W. Wharton, Judge

20